**EXHIBIT**

**Composite 1**

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIRST</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>ESCAMBIA</u>   COUNTY, FLORIDA

<u>SRTJR, LLC, OPTIMA CAPITAL, LLC</u>
Plaintiff                                                     Case # _____

                                                              Judge _____

vs.

<u>ARCH SPECIALTY INSURANCE COMPANY</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☒  $50,001- $75,000
☐  $75,001 - $100,000
☐  over $100,000.00

### III.    TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☒ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
      ☐ Residential Evictions
      ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  1

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Callie Frey</u>        Fla. Bar # <u>1039028</u>
     Attorney or party                (Bar # if attorney)

<u>Callie Frey    </u>        <u>01/16/2024</u>
 (type or print name)          Date

**IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                 Case No.: 2024- CA-

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

**<u>COMPLAINT</u>**

      Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC ("Plaintiffs" or "Insureds") sue

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("Arch" or "Insurer"), and allege:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

      1.      This is an action for breach of contract wherein the Insureds' damages are greater

than fifty thousand dollars ($50,000) exclusive of interest, costs, fees, and attorney's fees.

      2.      At all material times hereto, Insureds owned real property located at 6870 North 9th

Avenue, Pensacola, FL 32504, including two (2) commercial buildings (the "Property").

      3.      At all material times hereto, Insurer is and was a foreign corporation and was

authorized to, and did, sell and service property insurance policies within Escambia County,

Florida, including a policy to Insureds covering the Property.

      4.      Based on the foregoing, jurisdiction and venue are proper in Escambia County,

Florida.

**<u>ALLEGATIONS OF FACTS</u>**

      5.      On or about September 16, 2020, the subject insurance policy issued by Insurer for

Insureds' Property, bearing Policy Number ESP1000007-01 (the "Policy"), was in effect and

provided coverage to the Insureds' Property for damage caused by hurricanes. A copy of the Policy is attached hereto as **Exhibit "A."**

6.      On or about September 16, 2020, the Insureds' Property, as defined in the Policy, was damaged by Hurricane Sally (a covered cause of loss).

7.      After the Insureds reported the loss, the Insurer acknowledged Insureds' loss and assigned claim number 000013542810 to the reported loss (the "Claim").

8.      Despite widespread damage caused by Hurricane Sally, the Insurer wrongly alleged that such damage was not caused by Sally, and refused to provide payment for the Claim.

9.      If coverage is determined, the Insured will seek appraisal of the amount of the loss.

10.     Prior to the initiation of this action, the Insurer was afforded every opportunity to investigate the loss and otherwise indemnify the Insureds.

11.     All conditions precedent to the instant action have been performed, waived, or otherwise complied with.

## COUNT I – BREACH OF CONTRACT

12.     Insureds incorporate the prior allegations above as if set forth fully herein.

13.     Insureds are the named insureds under the Policy and said policy was in full force and effect as to Insureds at all times material to this Complaint, including when Insureds' Property was damaged by Hurricane Sally, a covered cause of loss.

14.     Insurer has materially breached the Policy by refusing to acknowledge coverage for all or a portion of the loss, and failing to fully and timely pay all amounts due to the Insureds pursuant to the Policy for damages caused by or related to Hurricane Sally.

15.     As a result of the Insurer's material breach, the Insureds have suffered damages in the form of insurance proceeds that have not been paid, interest, costs, fees, and attorney's fees, which the Insured seeks to recover.

16.     As a result of Insurer's breaches of the Policy, including its refusal to provide coverage and provide full compensation to Insureds for damages, the Property remains in a damaged condition and Insureds continues to suffer damages in paying for items which are properly covered by the Policy.

17.     As a result of Insurer's aforementioned breach of contract, it has become necessary that Insureds retain the services of the undersigned attorneys. Insureds are obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action including all resulting costs.

18.     Insureds are entitled to recover attorney's fees, fees, and costs pursuant to Sections 627.428, 626.9373, 626.911, 57.104, 57.041, Florida Statutes.

WHEREFORE, Plaintiffs requests that this Court enter a judgment against Defendant awarding damages directly and proximately caused by Insurer's breach, award costs, and attorney fees, fees, and interest and for any and all other remedies the Court sees fit to grant in favor of Insureds.

## DEMAND FOR JURY TRIAL

Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC, hereby demand a trial by jury on matters not determined via appraisal.

Dated this 16th day of January 2024.

By: /s/ *Callie Frey*
Callie Frey, Esq.
Florida Bar No. 1039028
Kurtis J. Keefer, Esq.

Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
ABroadwell@gadclaw.com
CFrey@gadclaw.com
JDelgado@gadclaw.com
**GOEDE, DEBOEST & CROSS, PLLC**
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
*Attorneys for Plaintiffs*

EXHIBIT "A"

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.



## ARCH SPECIALTY INSURANCE COMPANY
### (A Missouri Corporation)

Home Office Address:
2345 Grand Blvd.
Suite 900
Kansas City, Missouri  64108

Administrative Address:
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ  07311-1107
Tel: (866) 413-5550

## FLORIDA COMMERCIAL PROPERTY

## DECLARATIONS

## THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT – OF – POCKET EXPENSES TO YOU.

**Policy Number:**   ESP1000007-01
**Renewal of:**        ESP1000007-00


**Named Insured:**   SRTJR, LLC and Optima Capital, LLC.
**Address:**             6870 North 9th
                              Pensacola, FL 32504

**Policy Period:**
**From:**                 December 18, 2019          **To:**       December 18, 2020
                              at 12:01 A.M., Standard Time at your mailing address shown above.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| **Commercial Property Coverage Part** | Premium: | $61,427.00 | **PREMIUM** |
|---|---|---|---|
| | Policy Fee | $125.00 | |
| | FL SL Tax | $3,077.60 | $61,427.00 |
| | Stamping Fee | $61.55 **Total** | |
| Premium Shown is payable at inception. | EMPA Fee | $4.00 | $61,427.00 |
| | Total: | $64,695.15 | |
| **LOCATIONS COVERED:**      See Schedule of Locations | | | |

**FORMS AND ENDORSEMENTS Applying to this Coverage Part and Made Part of this Policy at Time of Issue:** See attached Schedule of Forms and Endorsements

**ISSUE DATE:**        March 10, 2020

**Surplus Lines Agent Name:**          Jessica Alcantara
**Surplus Lines Agent Address:**       970 Lake Carillon Drive
                                       Suite 106
                                       Saint Petersburg, FL 33716 US

**Surplus Lines Agent License:**       P074462
**Surplus Lines State Taxes were filed:**  FL

Arch Specialty Insurance Company is licensed in the state of Missouri only.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED: | SRTJR, LLC and Optima Capital, LLC. | TERM: December 18, 2019 to December 18, 2020 |
|---|---|---|
| POLICY NUMBER: | ESP1000007-01 | |

| END. NO. | FORM NO. | TITLE |
|---|---|---|
| 1 | 00 EXP0214 00 08 18 | MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE (WINDSTORM AND HAIL COVERAGE PERCENTAGE) |
| | 06 ML0002 00 12 14 | SIGNATURE PAGE (ARCH SPECIALTY) |
| | 00 EXP0091 00 11 03 | COMMON POLICY CONDITIONS |
| 2 | 00 ML0003 00 04 12 | SERVICE OF SUIT |
| | 06 CP0002 00 03 08 | CLAIMS HANDLING PROCEDURES (Arch Specialty Ins. Co.) |
| 3 | 00 EXP0125 00 06 06 | TOTAL TERRORISM EXCLUSION |
| | 00 ML0065 00 06 07 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") |
| 4 | 00 EXP0078 00 01 16 | OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT |
| 5 | 00 EXP0003 00 08 14 | EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS |
| 6 | 00 EXP0004 00 08 15 | ELECTRONIC DATA LOSS OR DAMAGE - EXCLUSION |
| 7 | 00 EXP0189 00 02 15 | ASBESTOS MATERIAL REMOVAL LIMITATION |
| 8 | 00 EXP0192 00 03 15 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| | 02 EXPD 00 09 02 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| | 00 EXP0092 00 04 16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| | 00 EXP0094 00 08 14 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| | 00 EXP0100 00 08 14 | CAUSES OF LOSS - SPECIAL FORM |
| 9 | 00 EXP0205 00 09 15 | PROPERTY COVERAGE ENHANCEMENT ENDORSEMENT – BROAD FORM |
| | 06 EXP0179 00 03 19 | SCHEDULE OF SUB-LIMITS |
| 10 | 00 EXP0207 00 09 16 | EQUIPMENT BREAKDOWN COVERAGE |
| 11 | 00 EXP0051 00 08 14 | NAMED WINDSTORM DEFINITION ENDORSEMENT |
| 12 | 00 EXP0195 00 03 15 | NAMED WINDSTORM PERCENTAGE DEDUCTIBLE ENDORSEMENT (REPORTED VALUE) |
| 13 | 00 EXP0211 00 02 17 | SEWER DRAIN AND SUMP BACKUP COVERAGE |
| 14 | 00 EXP0105 00 08 14 | ORDINANCE OR LAW COVERAGE |
| 15 | 00 EXP0169 00 06 14 | ORDINANCE OR LAW – INCREASED PERIOD OF RESTORATION |
| 16 | 00 EXP0081 00 08 14 | WARRANTIES |
| | 00 EXP0101 00 08 14 | COMMERCIAL PROPERTY CONDITIONS |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MINIMUM EARNED PREMIUM CLAUSE – PERCENTAGE
(WINDSTORM AND HAIL COVERAGE PERCENTAGE)**

This endorsement modifies insurance provided under this policy.

It is agreed that in the event of cancellation of this policy by you, a minimum premium of 35% of the original policy premium shall become earned, however 80.00% of the Windstorm and Hail portion of the policy premium being $34,742.00 shall be earned for those locations that Windstorm and Hail coverage existed any time during the period of June 1 to November 30; any conditions of the policy to the contrary notwithstanding.  In the event you cancel prior to the June 1 to November 30 time period, the Windstorm and Hail portion of the policy premium, if any, will be subject to the same percentage of the original policy premium.

Your failure to make timely payment of premium shall be considered a request by you for us to cancel.  In the event of such cancellation by us for non-payment of premium, the minimum premium of 35% for non-payment outside the period of June 1 to November 30 and 80% for any cancellation based on non-payment within the period of June 1 to November 30 shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if you remit the full premium due within ten (10) days of receiving the policy cancellation.

In the event of any other cancellation by us, the earned premium shall be computed pro rata, not subject to the minimum premium.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019



**Signature Page**

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested.

_____

John Mentz

President

_____

Patrick K. Nails

Secretary

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.     Cancellation**

    **1.**     The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.**     We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.**     10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **b.**     30 days before the effective date of cancellation if we cancel for any other reason.

    **3.**     We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **4.**     Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

    **5.**     If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

    **6.**     If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.     Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.     Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.     Inspections And Surveys**

    **1.**     We have the right to:

        **a.**     Make inspections and surveys at any time;

        **b.**     Give you reports on the conditions we find; and

        **c.**     Recommend changes.

    **2.**     We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of

any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.**    Are safe or healthful; or

   **b.**    Comply with laws, regulations, codes or standards.

**3.**    Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.**    Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E.    Premiums**

The first Named Insured shown in the Declarations:

**1.**    Is responsible for the payment of all premiums; and

**2.**    Will be the payee for any return premiums we pay.

**F.    Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.   Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SERVICE OF SUIT**

It is agreed that:

1.    In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  All matters arising under this Policy shall be determined in accordance with the law and practice of such Court, provided that nothing shall prohibit the **Insurer** from removing any action, suit or proceeding to a United States District Court.  The **Insurer** shall abide by the final decision of such court or any appellate court in the event of an appeal.

2.    Service of process in the above described action, suit or proceeding may be made upon: General Counsel, Arch Specialty Insurance Company, Harborside 3 210 Hudson Street, Suite 300 Jersey City, NJ 07311-1107.  Upon the request of the **Insured**, such General Counsel shall give a written undertaking to enter an appearance on behalf of the **Insurer** in the event that such an action, suit or proceeding shall be instituted.

3.    Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified in such statute as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted against the **Insurer** upon this Policy.  The Superintendent, Commissioner or Director of Insurance or other officer is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such action, suit or proceeding and to mail a copy of such process to the above mentioned General Counsel.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 2

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

# CLAIMS HANDLING PROCEDURES

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim. Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Company
PROPERTY Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE  68154
Phone:  877 688-ARCH (2724)
Fax:  866 266-3630
Email:  Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department. This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to an adjuster if necessary, and discuss further handling of the claim.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TOTAL TERRORISM EXCLUSION**

This endorsement modifies insurance provided under the Policy.

**A.**   The following definition is added and applies under this endorsement whenever the term terrorism, is enclosed in quotation marks:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.**   that involve the following or preparation for the following:

   **a.**   use or threat of force or violence; or

   **b.**   commission or threat of a dangerous act; or

   **c.**   commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.**   When:

   **a.**   the effect is to intimidate or coerce a government or a civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

   **b.**   it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

**B.**   The following exclusion is added:

**EXCLUSION OF TERRORISM**

We (the Company) will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such loss or damage.

This exclusion also applies when one or more of the following are attributed to an incident of "terrorism":

**1.**   The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.**   Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.**   The "terrorism" involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction, nuclear radiation or radioactive contamination; or

**4.**   The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**C.    Application Of Other Exclusions**

**1.**    When the EXCLUSION OF TERRORISM applies in accordance with the terms of **B.1., B.2.** or **B.3.**, such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

**2.**    The EXCLUSION OF TERRORISM contained in this Endorsement replaces any terrorism exclusion contained in this Coverage Form, Coverage Part or Policy.

**3.**    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion, or the War And Military Action Exclusion.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under this policy.

It is agreed that the following special terms and conditions apply to this policy:

1.  The DEFINITIONS Section of the policy and any forms or endorsements attached thereto are amended by the addition of the following Definition:

    "Occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one event.  The duration and extent of any one loss, disaster, casualty or series of losses, disasters or casualties will be limited to all losses or series of losses occurring during any period of 168 consecutive hours arising out of, and directly occasioned by, the same event.

    When the term applies to loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing proof of loss, you may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss occurs to any Covered Property.

2.  The premium for this policy is based upon the Statement of Values on file with us, or attached to this policy. In the event of loss hereunder, our liability, subject to the terms of paragraph **3.** below, shall be limited to the least of the following:

    a.  The actual adjusted amount of loss, less applicable deductible(s).

    b.  100% of the individually stated value for each scheduled item of interest insured, as shown on the latest Statement of Values on file with us, or attached to this policy, after applying the deductible(s).

    c.  The Limit of Liability or Amount of Insurance shown on the Declarations Page or endorsed onto this policy.

3.  The Limit of Liability or Amount of Insurance shown on the Declarations Page of this policy, or endorsed onto this policy, is the total limit of our liability applicable to each "occurrence". Notwithstanding any other terms and conditions of this policy, in no event shall our liability exceed this limit or amount, irrespective of the number of locations involved.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION AND LIMITED ADDITIONAL COVERAGE FOR FUNGUS**

This endorsement modifies insurance provided under this policy.

**A.**    The following item is added to **EXCLUSIONS,** section **B.**  With respect to the loss or damage addressed therein, this exclusion supersedes any other exclusion which addresses fungus.

     **EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria**

     We will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

     But if "fungus", wet or dry rot or bacteria results in:

     **1.**    A "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss", if the Causes of Loss – Special Form applies; or

     **2.**    A "covered cause of loss", we will pay for the loss or damage caused by that "covered cause of loss", if the Causes of Loss – Basic Form and Causes of Loss – Broad Form applies.

     This exclusion does not apply:

     **1.**    When "fungus", wet or dry rot or bacteria results from fire or lightning; or

     **2.**    To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.**    The following exclusion replaces any exclusion pertaining to continuous or repeated seepage or leakage of water; and supersedes any other exclusion, preclusion of coverage or exception to an exclusion pertaining to leakage or discharge of water or steam from a system or appliance.

     We will not pay for loss or damage cause by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**C.**    The following item is added to **ADDITIONAL COVERAGES**:

     **ADDITIONAL COVERAGE – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

     **1.**    This limited coverage applies only when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that "occurrence", and only if any loss resulting from the following is reported to us within 60 days of the "occurrence":

          **a.**    A "specified cause of loss" other than fire or lightning; or

          **b.**    Flood, if the Flood Coverage Endorsement applies to the affected premises.

          This Additional Coverage does not apply to lawns, trees, shrubs or plants which are a part of a vegetated roof.

2.    Under conditions described in item **A.1.** above, we will pay for loss or damage by "fungus", wet or dry rot or bacteria.  As used in this Limited Coverage, the term loss or damage means:

    a.    Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    b.    The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    c.    The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3.    The coverage provided under this Limited Coverage is limited to $15,000.  Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all "occurrences" which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular "occurrence" of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4.    The coverage provided under this Limited Coverage is a sub-limit and does not increase the applicable Limit of Insurance on any Covered Property.  If a particular "occurrence" results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.    The terms of this Limited Coverage do not increase or reduce the coverage provided under paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes of Loss form or under the Additional Coverage – Collapse.

6.    The following **6.a.** or **6.b.** applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage form.

    **a.**    If the loss which resulted in "fungus" wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days.  The days need not be consecutive.

    **b.**    If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days.  The days need not be consecutive.

**D.**    The following item is added to **DEFINITIONS**:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**E.**    Item **d.2.** under section **2.** of the **EXCLUSIONS** is amended to read:

"Rust, corrosion, decay, deterioration, hidden or latent defect or quality in property that causes it to damage or destroy itself".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 5

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ELECTRONIC DATA LOSS OR DAMAGE - EXCLUSION**

This endorsement modifies insurance provided under this policy.

**A.**  It is agreed that the following definitions apply:

"Electronic Data" means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature".  "Computer Virus" includes but is not limited to 'trojan horses', 'worms' and 'time or logic bombs'.

**B.**  Except as provided in the Additional Coverage – Electronic Data, if any, the following exclusion applies:

**Damage to Electronic Data**

We will not pay for loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" including loss of use, reduction in functionality, or any cost or expense to replace or restore such "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

This exclusion applies regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this exclusion does not apply to loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, strike, riot or civil commotion, leakage from fire extinguishing equipment, impact or collapse.  However, this exception does not apply to fire or explosion resulting from risks excluded under any terrorism exclusion.

**C.**  Except as provided in the Additional Coverage – Interruption Of Computer Operations, if any, the following is added to the Business Income and/or Extra Expense Coverage, as applicable:

**Additional Limitation – Interruption Of Computer Operations**

We will not pay for:

**1.**  Business Income loss incurred when a "suspension" of "operations" is caused by loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

**2.**  Extra Expense loss incurred when action is taken to avoid or minimize a "suspension" of "operations" caused by loss, destruction, distortion, erasure, corruption, deletion, manipulation

or alteration of or damage to "Electronic Data" from any cause whatsoever (including, but not limited to, "Computer Virus" or a willful or malicious act).

This limitation applies regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

However, this limitation will not apply to loss, destruction, distortion, erasure, corruption, deletion, manipulation or alteration of or damage to "Electronic Data" arising from the following specified causes of loss, if these causes of loss are not otherwise excluded: fire, lightning, explosion, windstorm or hail, strike, riot or civil commotion, leakage from fire extinguishing equipment, impact or collapse.   However, this exception does not apply to fire or explosion resulting from risks excluded under any terrorism exclusion.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 6

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**ASBESTOS MATERIAL REMOVAL LIMITATION**

This policy excludes any loss, damage or expense to remove or replace asbestos materials unless such materials are themselves damaged by a Covered Cause of Loss.

Notwithstanding that competent Government Authority may declare all or parts of the insured premises unfit for occupancy without removal or modifications to asbestos materials, our liability is limited to the proportion represented by the cost to repair the damaged part of the premises, not the entire property.

Similarly, if the policy provides any coverage for business income, extra expense, loss of rents or rental value or other loss of use or occupancy, such coverage shall be limited to the time necessary to repair or replace only the damaged portion(s) of the premises.

Nothing in this Endorsement shall override any radioactive contamination exclusion clause in the Policy to which this Endorsement is attached.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 7

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under this policy.

It is agreed that:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

**1.**    The exclusion set forth in Paragraph **2.** applies to all coverages under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**2.**    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.  However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this policy.

**3.**    With respect to any loss or damage subject to the exclusion in Paragraph **2.**, such exclusion supersedes any exclusion relating to "pollutants".

**4.**    The following provisions in this policy are hereby amended to remove reference to bacteria:

   **(a)**    EXCLUSION – "Fungus", Wet Rot, Dry Rot And Bacteria;

   **(b)**    ADDITIONAL  COVERAGE – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, Including any endorsement increasing the scope or amount of coverage.

The terms of the exclusion in Paragraph **2.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 8

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019



## ARCH SPECIALTY INSURANCE COMPANY
### (A Missouri Corporation)

Home Office Address:
2345 Grand Blvd.
Suite 900
Kansas City, Missouri  64108

Administrative Address:
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ  07311-1107
Tel: (866) 413-5550

## Commercial Property Coverage Part Declarations

| | |
|---|---|
| **Policy Number** | ESP1000007-01 |
| **Renewal of** | ESP1000007-00 |
| **Named Insured** | SRTJR, LLC and Optima Capital, LLC. |
| **Effective Date** | December 18, 2019 |

| Description of Premises | |
|---|---|
| **Premises Number** | All |
| **Building Number** | All |
| **Location, Construction, and Occupancy** | See Schedule of Locations |
| **Coverage Provided – Insurance at the described premises applies only for coverages for which a limit of Insurance is shown** | |
| **Premises Number** | All |
| **Building Number** | All |
| **Coverage** | Real Property, Business Income, Equipment Breakdown |
| **Limit of Insurance** | $14,020,000 Specific/Scheduled |
| **Coverage Cause of Loss** | Special |
| **Coinsurance (If extra expense coverage, limits on loss payment)** | NIL as respects Real and/or Personal Property |
| **Optional Coverages – applicable only when entries are made in the schedule below** | |
| **Premises Number** | All |
| **Building Number** | All |
| **Agreed Value** | Expiration Date<br>Coverage<br>Amount |
| **Replacement Cost** | ☑ Yes<br>☐ No<br>as respect to Real and Business Personal Property |
| **Actual Cash Value** | ☐ Yes<br>☑ No |
| **Functional Replacement Cost** | ☐ Yes<br>☑ No |
| **Indemnity – Applies to Business Income Only** | Monthly Limit<br>Maximum Period<br>Extended Period |

| Coverage | |
|---|---|
| **Deductible** | $5,000 Per Occurrence except; <br><br> $25,000 Per Occurrence with regard to All Covered Wind and Hail, except as Per the Named Windstorm Percentage Deductible Endorsement (Reported Values). This endorsement will display the Named Windstorm Deductible amounts. |
| **Total Premium** | Included |
| **Form(s)/Endorsement(s)** | |
| **Applicable To All Coverages** | See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03 |

*These Declarations, when combined with the common policy declarations, the common policy conditions, coverage form(s) and endorsements, if any, issued to form a part thereof, complete the contract of insurance.*

## BUILDING AND PERSONAL
## PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. Definitions.**

**A.    Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.    Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.    Building**, meaning the building or structure described in the Declarations, including:

**(1)**    Completed additions;

**(2)**    Fixtures, including outdoor fixtures;

**(3)**    Permanently installed:

**(a)**    Machinery and

**(b)**    Equipment;

**(4)**    Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)**    Fire extinguishing equipment;

**(b)**    Outdoor furniture;

**(c)**    Floor coverings; and

**(d)**    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)**    If not covered by other insurance:

**(a)**    Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b.** **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**c.** **Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2.** **Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.**    The cost of excavations, grading, backfilling or filling;

**g.**    Foundations of buildings, structures, machinery or boilers if their foundations are below:

    **(1)**    The lowest basement floor; or

    **(2)**    The surface of the ground, if there is no basement;

**h.**    Land (including land on which the property is located), water, growing crops or lawns;

**i.**    Personal property while airborne or waterborne;

**j.**    Bulkheads, pilings, piers, wharves or docks;

**k.**    Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.**    Retaining walls that are not part of a building;

**m.**    Underground pipes, flues or drains;

**n.**    Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic or electromechanical data processing or electronically controlled equipment and includes programs, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment. This Paragraph **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**o.**    The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

**p.**    Vehicles or self-propelled machines (including aircraft or watercraft) that:

    **(1)**    Are licensed for use on public roads; or

    **(2)**    Are operated principally away from the described premises.

    This paragraph does not apply to:

        **(a)**    Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

        **(b)**    Vehicles or self-propelled machines, other than autos, you hold for sale;

        **(c)**    Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3.    Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4.    Additional Coverages**

**a.    Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one "occurrence" of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5)    **Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense | |
| Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | | $90,000 |
| Amount of Deductible | | $500 |
| Amount of Loss | | $80,000 |
| Amount of Loss Payable | | $79,500 |
| | | ($80,000 - $500) |
| Debris Removal Expense | | $30,000 |
| Debris Removal Expense | | |
| Payable | | |
| | Basic Amount | $10,500 |
| | Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b.    Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)**    While it is being moved or while temporarily stored at another location; and

**(2)**    Only if the loss or damage occurs within 30 days after the property is first moved.

**c.    Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)**    Assumed by contract or agreement prior to loss; or

**(2)**    Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d.    Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e.    Increased Cost Of Construction**

**(1)**   This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)**   In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum enforcement standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)**   The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)**   Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

    **(a)**   You were required to comply with before the loss, even when the building was undamaged; and

    **(b)**   You failed to comply with.

**(5)**   Under this Additional Coverage, we will not pay for:

    **(a)**   The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

    **(b)**   Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)**   The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

**(7)**   With respect to this Additional Coverage:

    **(a)**   We will not pay for the Increased Cost of Construction:

        **(i)**   Until the property is actually repaired or replaced, at the same or another premises; and

        **(ii)**   Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **(b)**   If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

    **(c)**   If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)**   This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)**   The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.**   **Electronic Data**

**(1)**   Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)**   Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)**   The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

    **(a)**   If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

    **(b)**   If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

    **(c)**   If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

    **(d)**   Regardless of the Causes of Loss Form applicable, we will not pay for loss or damage caused by or resulting from a virus, harmful code or similar instruction, whether from an internal or external source, introduced into or enacted on a computer system (including electronic

data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. There also is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of "occurrences" of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first "occurrence" does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an "occurrence" which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the "occurrence" began.

**5.    Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

Each of the following Coverage Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a.    Newly Acquired Or Constructed Property**

**(1)    Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2)    Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3)** **Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b.** **Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c.** **Valuable Papers And Records (Other Than Electronic Data)**

**(1)**   You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist.  But this Extension does not apply to valuable papers and records which exist as electronic data.  Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)**   If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)**   If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)**   Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations.  Such amount is additional insurance.  We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.  The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d.   Property Off-Premises**

**(1)**   You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)**   Temporarily at a location you do not own, lease or operate;

**(b)**   In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)**   At any fair, trade show or exhibition.

**(2)**   This Extension does not apply to property:

**(a)**   In or on a vehicle; or

**(b)**   In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)**   The most we will pay for loss or damage under this Extension is $10,000.

**e.   Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)**   Fire;

**(2)**   Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one "occurrence", regardless of the types or number of items lost or damaged in that "occurrence".

**f.** **Non-Owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**B.** **Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C.** **Limits Of Insurance**

The most we will pay for loss or damage in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one "occurrence".

The limits applicable to the following Additional Coverages apply in accordance with the terms of such coverage and are in addition to the Limits of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean Up and Removal;

3. Increased Cost of Construction; and

4. Electronic Data.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D.    Deductible**

In any one "occurrence" of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the "occurrence" involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per "occurrence".

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | |
|---|---|
| Deductible: | $250 |
| Limit of Insurance – Bldg. 1: | $60,000 |
| Limit of Insurance – Bldg. 2: | $80,000 |
| Loss to Bldg. 1: | $60,100 |
| Loss to Bldg. 2: | $90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$   60,100

–      250

$   59,850   Loss Payable – Bldg. 1

The Deductible applies once per "occurrence" and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss to Bldg. 2: | $90,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Bldg. 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable – Bldg. 2: | $80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $140,000 |

**E.    Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.    Abandonment**

There can be no abandonment of any property to us.

**2.    Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.**    Pay its chosen appraiser; and

**b.**    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3.    Duties In The Event Of Loss Or Damage**

**a.**    You must see that the following are done in the event of loss or damage to Covered Property:

**(1)**    Notify the police if a law may have been broken.

**(2)**    Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)**    As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

    **(1)** We have reached agreement with you on the amount of loss; or

    **(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5.** **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** **Vacancy**

**a.** **Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

        **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

        **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

            **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

       **(ii)**    Used by the building owner to conduct customary operations.

  **(2)**    Buildings under construction or renovation are not considered vacant.

**b.**    **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)**    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

    **(a)**    Vandalism;

    **(b)**    Sprinkler leakage, unless you have protected the system against freezing;

    **(c)**    Building glass breakage;

    **(d)**    Water damage;

    **(e)**    Theft; or

    **(f)**    Attempted theft.

**(2)**    With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7.**    **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.**    At actual cash value as of the time of loss or damage, except as provided in **b.**, **c.**, **d.** and **e.** below.

**b.**    If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)**    Awnings or floor coverings;

**(2)**    Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)**    Outdoor equipment or furniture.

**c.**    "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.**    Glass at the cost of replacement with safety glazing material if required by law.

  **e.** Tenant's Improvements and Betterments at:

   **(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

   **(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    **(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   **(3)** Nothing if others pay for repairs or replacement.

**F.** **Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

 **1.** **Coinsurance**

  If a Coinsurance percentage is shown in the Declarations, the following condition applies.

  **a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

   Instead, we will determine the most we will pay using the following steps:

   **(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   **(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

   **(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

   **(4)** Subtract the deductible from the figure determined in Step **(3)**.

   We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | | |
|---|---|---|
| | The value of the property is | $250,000 |
| | The Coinsurance percentage for it is | 80% |
| | The Limit of Insurance for it is | $100,000 |

The Deductible is $250

The amount of loss is $40,000

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The value of the property is $250,000

The Coinsurance percentage for it is 80%

The Limit of Insurance for it is $200,000

The Deductible is $250

The amount of loss is $40,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When: The value of property is:

Bldg. at Location No. 1 $75,000

Bldg. at Location No. 2 $100,000

Personal Property at Location No. 2 $75,000

$250,000

The Coinsurance percentage for it is 90%

The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is $180,000

The Deductible is $1,000

The amount of loss is:

Bldg. at Location No. 2 $30,000

Personal Property at Location No. 2. $20,000

$50,000

Step **(1)**: $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the

penalty shown below)

Step **(2)**:    $180,000 ÷ $225,000 = .80

Step **(3)**:    $50,000 x .80 = $40,000

Step **(4)**:    $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.**    **Mortgageholders**

**a.**    The term mortgageholder includes trustee.

**b.**    We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.**    The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.**    If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)**    Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)**    Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)**    Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.**    If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)**    The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)**    The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.**    If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)**    10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)**    30 days before the effective date of cancellation if we cancel for any other reason.

**g.**    If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G.    Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.    Agreed Value**

**a.**    The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.**    If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.**    The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)**    On or after the effective date of this Optional Coverage; and

**(2)**    Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2.    Inflation Guard**

**a.**    The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

**b.**    The amount of increase will be:

**(1)**    The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)**    The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)**    The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | The applicable Limit of Insurance is | $100,000 |
|---|---|---|
| | The annual percentage increase is | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | 146 |

The amount of increase is
$100,000 x .08 x 146

÷ 365 =                                                              $3,200

3.      **Replacement Cost**

    **a.**    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

    **b.**    This Optional Coverage does not apply to:

        **(1)**    Personal property of others;

        **(2)**    Contents of a residence;

        **(3)**    Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

        **(4)**    "Stock", unless the Including "Stock" option is shown in the Declarations.

    Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

    **c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**    We will not pay on a replacement cost basis for any loss or damage:

        **(1)**    Until the lost or damaged property is actually repaired or replaced; and

        **(2)**    Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

    With respect to tenants' improvements and betterments, the following also apply:

        **(3)**    If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

        **(4)**    We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

    **e.**    We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

        **(1)**    The Limit of Insurance applicable to the lost or damaged property;

        **(2)**    The cost to replace the lost or damaged property with other property:

            **(a)**    Of comparable material and quality; and

      **(b)**    Used for the same purpose; or

    **(3)**    The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **f.**    The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4.**    **Extension Of Replacement Cost To Personal Property Of Others**

    **a.**    If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

    **b.**    With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H.**    **Definitions**

**1.**    **"Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.**    **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.**    **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# BUSINESS INCOME (AND EXTRA EXPENSE)
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. Definitions.**

A.    **Coverage**

    1.    **Business Income**

        Business Income means the:

        **a.**    Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

        **b.**    Continuing normal operating expenses incurred, including payroll.

        For manufacturing risks, Net Income includes the net sales value of production.

        Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

        **(1)**    Business Income including "Rental Value".

        **(2)**    Business Income other than "Rental Value".

        **(3)**    "Rental Value".

        If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

        If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

        We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

        With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

        **a.**    The portion of the building which you rent, lease or occupy;

    **b.**    The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle).

    **c.**    Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**2.**    **Extra Expense**

    **a.**    Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

    **b.**    Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

    We will pay Extra Expense (other than the expense to repair or replace property) to:

    **(1)**    Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

    **(2)**    Minimize the "suspension" of business if you cannot continue "operations".

    We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3.**    **Covered Causes Of Loss, Exclusions And Limitations**

    See applicable Causes of Loss form as shown in the Declarations.

**4.**    **Additional Limitation – Interruption Of Computer Operations**

    **a.**    Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

    **b.**    Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

    **c.**    Electronic data means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic or electromechanical data processing or electronically controlled equipment and includes programs, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

**5.**    **Additional Coverages**

    **a.**    **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply:

**(1)**   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)**   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

**(1)**   3 consecutive weeks after the time of that action; or

**(2)**   When your Business Income coverage ends;

whichever is later.

**b.**   **Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)**   New buildings or structures, whether complete or under construction;

**(2)**   Alterations or additions to existing buildings or structures; and

**(3)**   Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)**   Used in the construction, alterations or additions; or

    **(b)**   Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c.**   **Extended Business Income**

**(1)**   **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations

due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Interruption Of Computer Operations.

**(d)** Regardless of the Causes Of Loss Form applicable, we will not pay for loss or damage caused by or resulting from a virus, harmful code or similar instruction, whether from an internal or external source, introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. There also is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage – Interruption Of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6.    Coverage Extension**

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

NEWLY ACQUIRED LOCATIONS

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

**B.     Limits Of Insurance**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

**C.     Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1.     Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to

agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.**    Pay its chosen appraiser; and

**b.**    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.**    **Duties In The Event Of Loss**

    **a.**    You must see that the following are done in the event of loss:

        **(1)**    Notify the police if a law may have been broken.

        **(2)**    Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

        **(3)**    As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

        **(4)**    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        **(5)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

        **(6)**    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

        **(7)**    Cooperate with us in the investigation or settlement of the claim.

        **(8)**    If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

    **b.**    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.**    **Loss Determination**

    **a.**    The amount of Business Income loss will be determined based on:

     **(1)**   The Net Income of the business before the direct physical loss or damage occurred;

     **(2)**   The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

     **(3)**   The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

     **(4)**   Other relevant sources of information, including:

          **(a)**   Your financial records and accounting procedures;

          **(b)**   Bills, invoices and other vouchers; and

          **(c)**   Deeds, liens or contracts.

**b.**   The amount of Extra Expense will be determined based on:

     **(1)**   All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

          **(a)**   The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

          **(b)**   Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

     **(2)**   Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c.**   **Resumption Of Operations**

   We will reduce the amount of your:

     **(1)**   Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

     **(2)**   Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.**   If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4.      **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a.      We have reached agreement with you on the amount of loss; or

b.      An appraisal award has been made.

D.      **Additional Condition**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

a.      The Coinsurance percentage shown for Business Income in the Declarations; times

b.      The sum of:

(1)     The Net Income (Net Profit or Loss before income taxes), and

(2)     Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1.      Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2.      Divide the Limit of Insurance for the described premises by the figure determined in Step **1.**; and

3.      Multiply the total amount of loss by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1.      Prepaid freight – outgoing;

2.      Returns and allowances;

3.      Discounts;

4.      Bad debts;

5.     Collection expenses;

6.     Cost of raw stock and factory supplies consumed (including transportation charges);

7.     Cost of merchandise sold (including transportation charges);

8.     Cost of other supplies consumed (including transportation charges);

9.     Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10.    Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

11.    All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

12.    Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:     The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been          $400,000

The Coinsurance percentage is          50%

The Limit of Insurance is          $150,000

The amount of loss is          $80,000

Step **1:**     $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **2:**     $150,000 ÷ $200,000 = .75

Step **3:**     $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When:     The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been          $400,000

The Coinsurance percentage is          50%

The Limit of Insurance is          $200,000

The amount of loss is          $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E.    Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.    Maximum Period Of Indemnity**

**a.**    The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.**    The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)**    The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)**    The Limit Of Insurance shown in the Declarations.

**2.    Monthly Limit Of Indemnity**

**a.**    The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.**    The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)**    The Limit of Insurance, multiplied by

**(2)**    The fraction shown in the Declarations for this Optional Coverage.

**Example:**

| When: | | |
|---|---|---|
| | The Limit of Insurance is | $120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | |
| | $120,000 x 1/4 = $30,000 | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1-30 | $40,000 |
| | Days 31-60 | $20,000 |
| | Days 61-90 | $30,000 |
| | | $90,000 |
| | We will pay: | |
| | Days 1-30 | $30,000 |
| | Days 31-60 | $20,000 |

| | |
|---|---|
| Days 61-90 | $30,000 |
| | $80,000 |

The remaining $10,000 is not covered.

**3.   Business Income Agreed Value**

**a.**   To activate this Optional Coverage:

**(1)**   A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)**   During the 12 months prior to the date of the Work Sheet; and

**(b)**   Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)**   The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)**   The Coinsurance percentage shown in the Declarations; multiplied by

**(b)**   The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.**   The Additional Condition, Coinsurance, is suspended until:

**(1)**   12 months after the effective date of this Optional Coverage; or

**(2)**   The expiration date of this policy;

whichever occurs first.

**c.**   We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)**   Within 12 months of the effective date of this Optional Coverage; or

**(2)**   When you request a change in your Business Income Limit of Insurance.

**d.**   If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)**   The Business Income Limit of Insurance; divided by

**(2)**   The Agreed Value.

**Example:**

| When: | The Limit of Insurance is | $100,000 |
|---|---|---|
| | The Agreed Value is | $200,000 |
| | The amount of loss is | $80,000 |

Step **(a):**    $100,000 ÷ $200,000 = .50

Step **(b):**    .50 x $80,000 = $40,000

> We will pay $40,000. The remaining $40,000 is not covered.

**4.    Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income**, the number "30" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F.    Definitions**

**1.    "Finished Stock"** means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.    "Operations"** means:

**a.**    Your business activities occurring at the described premises; and

**b.**    The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.    "Period of Restoration"** means the period of time that:

**a.**    Begins:

**(1)**    72 hours after the time of direct physical loss or damage for Business Income coverage; or

**(2)**    Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.**    Ends on the earlier of:

**(1)**    The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)**    The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)**    Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** **"Rental Value"** means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**6.** **"Suspension"** means:

**a.** The slowdown or cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

## CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G. Definitions.**

**A.    Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Direct Physical Loss unless the loss is excluded or limited in this policy.

**B.    Exclusions**

**1.**    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a.    Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)**    Regulating the construction, use or repair of any property; or

**(2)**    Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)**    An ordinance or law that is enforced even if the property has not been damaged; or

**(2)**    The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b.    Earth Movement**

**(1)**    Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)**    Landslide, including any earth sinking, rising or shifting related to such event;

**(3)**    Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)**    Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)**    Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay

for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)**    Airborne volcanic blast or airborne shock waves;

**(b)**    Ash, dust or particulate matter; or

**(c)**    Lava flow.

With respect to coverage for Volcanic action as set forth in **(5)(a), (5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single "occurrence".

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c.    Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d.    Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.    Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)**    Originates away from the described premises; or

**(2)**    Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating Internet access or access to any electronic, cellular or satellite network.

**f.   War And Military Action**

    **(1)**   War, including undeclared or civil war;

    **(2)**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)**   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.   Water**

    **(1)**   Flood, surface water, waves (including tidal wave and tsunami), tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not (including storm surge);

    **(2)**   Mudslide or mudflow;

    **(3)**   Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment; or

    **(4)**   Water under the ground surface pressing on, or flowing or seeping through:

        **(a)**   Foundations, walls, floors or paved surfaces;

        **(b)**   Basements, whether paved or not; or

        **(c)**   Doors, windows or other openings; or

    **(5)**   Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)**, or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.  An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, as described in **g.(1)** through **g.(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

Exclusions **B.1.a.** through **B.1.g.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.**  We will not pay for loss or damage caused by or resulting from any of the following:

**a.**  Artificially generated electrical, magnetic or electromagnetic energy or current, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any:

**1.**  Electrical or electronic wire(s), devices, appliances, system or network; or

**2.**  Device, appliance, system or network utilizing cellular or satellite technology.

But if fire results, we will pay for the loss or damage caused by that fire.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)**  Electrical current, including arcing;

**(b)**  Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)**  Pulse of electromagnetic energy; or

**(d)**  Electromagnetic waves or microwaves.

**b.**  Delay, loss of use or loss of market.

**c.**  Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.**  **(1)**  Wear and tear;

**(2)**  Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)**  Smog;

**(4)**  Settling, cracking, shrinking or expansion;

**(5)**  Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)**  Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)**  The following causes of loss to personal property:

**(a)**  Dampness or dryness of atmosphere;

**(b)**  Changes in or extremes of temperature; or

**(c)**  Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   **(1)** You do your best to maintain heat in the building or structure; or

   **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   **(1)** Acting alone or in collusion with others; or

   **(2)** Whether or not occurring during your normal hours of operation.

   This exclusion does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

   **(1)** An abrupt falling down or caving in;

   **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion **k.** does not apply:

    **(a)**    To the extent that coverage is provided under the Additional Coverage, Collapse; or

    **(b)**    To collapse caused by one or more of the following:

        **(i)**    The "specified causes of loss";

        **(ii)**    Breakage of building glass;

        **(iii)**    Weight of rain that collects on a roof; or

        **(iv)**    Weight of people or personal property.

**l.**    Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.**    Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.**    We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

    **a.**    Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

    **b.**    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    **c.**    Faulty, inadequate or defective:

        **(1)**    Planning, zoning, development, surveying, siting;

        **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)**    Materials used in repair, construction, renovation or remodeling; or

        **(4)**    Maintenance;

    of part or all of any property on or off the described premises.

**4.**    **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a.** **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

   **(a)** Damage or destruction of "finished stock"; or

   **(b)** The time required to reproduce "finished stock".

   This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

   **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b.** **Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

   **(a)** Your cancelling the lease;

   **(b)** The suspension, lapse or cancellation of any license; or

   **(c)** Any other consequential loss.

**c.** **Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

   **(a)** Paragraph **B.1.a.** Ordinance Or Law;

      **(b)**    Paragraph **B.1.c.** Governmental Action;

      **(c)**    Paragraph **B.1.d.** Nuclear Hazard;

      **(d)**    Paragraph **B.1.e.** Utility Services; and

      **(e)**    Paragraph **B.1.f.** War And Military Action.

**(2)**    The following additional exclusions apply to insurance under this Coverage Form:

      **(a)**    **Contractual Liability**

          We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

          **(i)**    Your assumption of liability was executed prior to the accident; and

          **(ii)**    The building is Covered Property under this Coverage Form.

      **(b)**    **Nuclear Hazard**

          We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5.**    **Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C.**    **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**    We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    **a.**    Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or

damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.**  Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.**  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **(1)**  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   **(2)**  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.**  Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

   **(1)**  Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   **(2)**  Business Income coverage or Extra Expense coverage.

**e.**  Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.**  Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.**  Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

   **(1)**  Dampness or dryness of atmosphere or of soil supporting the vegetation;

   **(2)**  Changes in or extremes of temperature;

   **(3)**  Disease;

   **(4)**  Frost or hail; or

   **(5)**  Rain, snow, ice or sleet.

**2.**  We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.**  Animals, and then only if they are killed or their destruction is made necessary.

**b.**  Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        **(1)**    Glass; or

        **(2)**    Containers of property held for sale.

  **c.**    Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

        However, this limitation does not apply:

        **(1)**    If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

        **(2)**    To Business Income coverage or to Extra Expense coverage.

**3.**    The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one "occurrence" of theft, regardless of the types or number of articles that are lost or damaged in that "occurrence". The special limits are:

  **a.**    $2,500 for furs, fur garments and garments trimmed with fur.

  **b.**    $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

  **c.**    $2,500 for patterns, dies, molds and forms.

  **d.**    $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

    These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

    This limitation, **C.3.,** does not apply to Business Income coverage or to Extra Expense coverage.

**4.**    We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

  **a.**    Results in discharge of any substance from an automatic fire protection system; or

  **b.**    Is directly caused by freezing.

    However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D.**    **Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse and applies only to an abrupt collapse as described and limited in **D.1.** through **D.5.** below.

**1.**    For the purposes of this Additional Coverage - Collapse:

**a.** Abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

**b.** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of abrupt collapse;

**c.** A part of a building that is standing is not considered to be in a state of abrupt collapse even if it has separated from another part of the building;

**d.** A building that is standing or any part of a building that is standing is not considered to be in a state of abrupt collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

**b.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**c.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**d.** Weight of people or personal property;

**e.** Weight of rain that collects on a roof;

**f.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes Of Loss form for the causes of loss listed in **2.a., 2.d.** and **2.e.**

**3.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

     **f.**     Piers, wharves and docks;

     **g.**     Beach or diving platforms or appurtenances;

     **h.**     Retaining walls; and

     **i.**     Walks, roadways and other paved surfaces;

if the abrupt collapse is caused by a cause of loss listed in **2.b.** through **2.f.,** we will pay for loss or damage to that property only if:

     **a.**     Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

     **b.**     The property is Covered Property under this Coverage Form.

**4.**     If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

     **a.**     The collapse of personal property was caused by a Cause of Loss listed in **2.a.** through **2.f.** above;

     **b.**     The personal property which collapses is inside a building; and

     **c.**     The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in.

**5.**     This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**F.**    **Additional Coverage Extensions**

    **1.**    **Property In Transit**

     This Extension applies only to your personal property to which this form applies.

     **a.**     You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory. For the purposes of this Coverage Extension, the coverage territory is extended to include Canada but only for a period of thirty (30) consecutive days.  Coverage begins when the property leaves the United States and automatically ends after thirty (30) days or at the end of the policy period, whichever occurs first.

    **b.** Loss or damage must be caused by or result from one of the following causes of loss:

        **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

        **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

        **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    **c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.,** does not increase the Limit of Insurance.

**G. Definitions**

**1. "Specified Causes of Loss"** means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)** The cost of filling sinkholes; or

        **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

        **(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROPERTY COVERAGE ENHANCEMENT ENDORSEMENT – BROAD FORM**

This endorsement modifies insurance provided under the following:

**Building and Personal Property Coverage Form**
**Business Income with Extra Expense Coverage Form**
**Business Income without Extra Expense Coverage Form**
**Causes of Loss Basic Form**
**Causes of Loss Broad Form**
**Causes of Loss Special Form**

It is agreed that the following Additional Coverages and Extensions of Coverage are included in this policy, but only if a Sub-Limit applicable to such is shown in the Schedule of Sub-Limits of Insurance. The most we will pay under these additional coverages and extensions of coverage in any one "occurrence" is the sub-limit shown in the schedule. If the Coverage does not apply, the phrase "Not Available" shall be inserted in the Sub-Limit column.

If a Schedule Aggregate Limit is shown in the Schedule, such limit shall apply to all losses in any one "occurrence" regardless of the number of coverages and extensions involved unless otherwise noted in endorsement.

### Schedule of Sub-Limits of Insurance

| ITEM | COVERAGE | SUBLIMIT |
|------|----------|----------|
| A | Accounts Receivable | $100,000 |
| B | Builder's Risk | $100,000 |
| C | Builder's Risk Soft Cost | $10,000 |
| D | Civil Authority | $100,000 or 30 Days, whichever is less |
| E | Contingent Time Element | $50,000 or 30 days, whichever is less |
| F | Debris Removal | $100,000 whichever is less |
| G | Electronic Data & Media | $100,000 |
| H | Errors or Omissions | $25,000 |
| I | Extended Period of Indemnity | 60 Days |
| J | Extra Expense/Expediting Expense | $50,000 |
| K | Fine Arts | $50,000 |
| L | Fire Department Service Charges | $10,000 |
| M | Ingress/Egress | $50,000 or 30 Days, whichever is less |
| N | Leased or Rented Equipment | $10,000 subject to a $25,000 annual aggregate |
| O | Leasehold Interest | $25,000 |
| P | Lost Key | $10,000 |
| Q | Miscellaneous Unnamed Locations | $25,000 |
| R | Newly Acquired Buildings | $250,000 |
| S | Ordinance or Law Coverage Coverage A, B and C Combined Limit | $250,000 Refer to Ordinance and Law. Coverage D: $100,000 |
| T | Outdoor Property | $25,000 subject to $250 per item for outdoor shrubs, trees, and plants |
| U | Personal Effects and Property of | $25,000 |

| | Others | |
|---|---|---|
| V | Pollutant Clean Up and Removal Coverage | $25,000 |
| W | Professional Fees | $10,000 per occurrence and annual aggregate |
| X | Property Off Premises | $25,000 |
| Y | Reclaiming, Restoring, or Repairing Land Improvements | $10,000 |
| Z | Reward Reimbursement | $10,000 |
| AA | Royalties | $10,000 |
| BB | Utility Services Coverage Excluding Transmission and Distribution Lines | $100,000 |
| CC | Spoilage | $10,000 |
| DD | Transit | $25,000 |
| EE | Valuable Papers and Records | $100,000 |
| SCHEDULE AGGREGATE LIMIT | | Not Applicable |

The Sub-Limits of Insurance for the following Coverages are included in the Occurrence Limit for the Covered Property indicated on the Declaration Page(s) and are not in addition thereto.  The following Coverages are subject to all terms, conditions and exclusions of this Policy unless modified herein.

**A.    Accounts Receivable**

You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage to accounts receivable.  We will pay:

1.    All amounts due from your customers that you are unable to collect.

2.    Interest charges on any loan required to offset amounts you are able to collect pending our payment of these amounts:

3.    Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

4.    Other reasonable expenses that you incur to re-establish your records of accounts receivable

that result from direct physical loss or damage by any Covered Causes of Loss to your records of accounts receivable.

Coverage does not apply to:

1.    Records of accounts receivable in storage away from the premises shown in the Declarations; or

2.    Contraband or property in the course of illegal transportation or trade.

This coverage extension does not apply to loss or damage:

1.    Due to delay, loss of use, loss of market or any other consequential loss.

2.    Due to fraudulent, dishonest or criminal act (including theft) by you, a partner therein, an employee (including temporary employee and leased worker) or an officer, director or trustee thereof, while working or otherwise and whether acting alone or in collusion with others;

3.    Due to bookkeeping, accounting or billing errors or omissions;

4.    The proof of which as to factual existence, is dependent upon an audit of records or an inventory computation;

5.    Due to alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; or

6.    Due to electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

   a.    Programming errors or faulty machine instructions;

   b.    Faulty installation or maintenance of data processing equipment or component parts;

   c.    An "occurrence" that took place more than 100 feet from your "premises"; or

   d.    Interruption of electrical power supply, power surge, blackout or brownout if the cause of such "occurrence" took place more than 100 feet from your "premises".

   But we will pay for direct loss or damage caused by lightning.

7.    Due to voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

8.    Due to unauthorized instructions to transfer property to any person or to any place.

9.    Due to neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**B.    Builders Risk**

This policy covers, if not otherwise excluded:

1.    New buildings or structures while in the course of construction at Insured locations listed in the Schedule of Insured Locations;

2.    Existing buildings or structures while in the course of alteration, extension, alteration, or renovation at Insured locations listed in the Schedule of Insured Locations;

3.    Materials or supplies intended to become a permanent part of the buildings or structures in 1. or 2. above

4.    Machinery and equipment intended to become a permanent part of the buildings or structures in 1. or 2. above while in the course of erection, installation, or assembly including testing and commissioning of such machinery and equipment.

**C.    Builders Risk Soft Costs**

For Property under Construction, this policy is extended to cover "soft costs" incurred by you during the "period of restoration". Such "soft costs" must be the result of direct loss or damage from a Covered Cause of Loss. We will pay reasonable and necessary "soft costs" over and above those costs which would have been incurred by you during the "period of restoration" had no loss occurred.

"Soft costs" means:

1.   The amount of actual interim or construction financing interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;

2.   Realty taxes and ground rent if any;

3.   Advertising and promotional expenses;

4.   Cost of additional commissions;

5.   Architects, surveyors, legal, consulting engineers, accounting, licenses, permits, or other fees not otherwise covered by this Policy;

6.   Project administration expense, but not including development fees;

7.   Insurance premiums;

8.   Founder's fee refunds; and

9.   Other similar costs you incur over and above the costs that you normally would have incurred in course of construction.

**D.   Civil Authority**

Under the Business Income (And Extra Expense) Coverage Form and the Business Income (Without Extra Expense) Coverage Form, paragraph 5. and paragraph 4. respectively, Additional Coverages, Civil Authority, reference to three consecutive weeks with respect to the Business Income coverage period is deleted and replaced by the lesser of the number of days or dollar Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**E.   Contingent Time Element**

Under the Business Income (And Extra Expense) Coverage Form and the Business Income (Without Extra Expense) Coverage Form, the Business Income coverage of this policy is extended to cover the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration" directly resulting from physical loss or damage of the type insured against by this policy to property not otherwise excluded by this policy at "direct supplier or customer locations".

"Direct supplier or customer locations" mean those facilities owned, operated, or maintained by others whom you depend on to:

1.   Deliver materials or services to you or to others for your account;

2.   Accept your products or services; or

3.   Manufacture products for delivery to your customers.

The phrase customer or supplier does not include and this extension does not apply to:

1.    Any company supplying the insured premises or receiving from the insured premises electricity, fuel, water, steam, refrigeration, or communications of every type and description; or

2.    Indirect suppliers or customers that may deliver, accept or manufacture products or services to direct suppliers or customers.

The Limit of Insurance is the lesser of the number of days or the dollar amount shown in the Schedule of Sub-Limits of Insurance.

**F.    Debris Removal**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 4. Additional Coverages, a. Debris Removal, reference to $10,000 in subparagraph (4) is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**G.    Electronic Data**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 4. Additional Coverages, f. Electronic Data, reference to $2,500 in subparagraph (4) is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**H.    Errors and Omissions**

We will pay expenses incurred as a result of direct physical loss or damage at locations within the coverage territory that are owned, leased or operated by you, if such loss or damage is not payable under this policy solely due to:

1.    Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2.    Failure through any error or unintentional omission to:

    a.    Include your location at the inception of the policy; or

    b.    Report any newly acquired location before the period of automatic coverage provided under this policy for Newly Acquired or Constructed Property expires.

3.    With respect to subparagraphs 1. and 2. Above, this Errors or Omissions additional coverage does not allow you or your representative to correct any value shown in the Statement of Values.

4.    This policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

5.    It is a condition of this additional coverage that any error or unintentional omission be reported by you to us when discovered and an additional premium be paid as determined by us.

6.    There is no coverage under this paragraph for loss or damage which is covered under the Newly Acquired or Constructed Property or Miscellaneous Unnamed Locations provisions, if any, of this policy.

**I.**    **Extended Period of Indemnity**

Under the Business Income (And Extra Expense) Coverage Form and the Business Income (Without Extra Expense) Coverage Form, paragraph 5. and paragraph 4. respectively, Additional Coverages, Extended Business Income, the number "30" in subparagraphs (1) (b) and (2) (b) is replaced by the number shown in the Schedule of Sub-Limits of Insurance.

**J.**    **Extra Expense/Expediting Expense**

This Policy is extended to cover the loss sustained by you for Extra Expense during the "period of restoration" resulting from direct physical loss or damage from a Covered Cause of Loss to Covered Property utilized by you.  Extra Expense means:

1.    The reasonable and necessary extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the your business; and

2.    The reasonable and necessary extra costs of temporarily using your property or facilities or the property or facilities of others.

3.    The reasonable extra costs (expediting expenses) for temporary repair of damaged property and for expediting the permanent repair or replacement of such damaged property.  This includes overtime wages and extra costs of express or other rapid means of transportation.  This does not include expenses recoverable elsewhere under this policy.

You agree to use any suitable property or service owned or controlled by you or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this policy.

The Limit of Insurance is the lesser of the number of days or the dollar amount shown in the Schedule of Sub-Limits of Insurance.

**K.**    **Fine Arts**

We will pay for direct physical loss or damage to "Fine Arts" located at an insured location specified on the Schedule of Locations on file.  However, no coverage is provided for:

1.    Breakage, marring, scratching, chipping or denting of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture, antique jewelry or similar fragile articles, unless such breakage, marring, scratching, chipping or denting is caused by a Covered Cause of Loss

2.    Physical loss or damage as a result of restoring, repairing or retouching processes.

The valuation of property will be determined as of the date of loss or damage and will be the least of the following amounts:

a.    The actual cash value of the property;

b.    The lowest figure in your inventories, stock books, stock papers or lists existing as of the date of loss or damage;

c.    The cost of reasonably restoring the property to its condition immediately before loss or damage; or

d.    The cost of replacing that property with substantially identical property.

"Fine Arts" as used in this provision means paintings, rare books, manuscripts, pictures, prints, etchings, drawings, tapestries, bronzes, statuary, potteries, porcelains, marbles, and other bona fide works of arts, or items of rarity or historical value.

**L.    Fire Department Service Charges**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 4. Additional Coverages, c. Fire Department Service Charge, reference to $1,000 is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**M.    Ingress Egress**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the necessary "suspension" of your "operations" during the "period of restoration" due to the partial or total physical prevention of ingress to or egress from the described premises, whether or not the premises or Covered Property is damaged provided that both the following apply:

1.    Such prevention is a direct result of physical damage to property within one (1) mile of the described premises and that property is the type of property insured, and not excluded by this Policy; and

2.    The damage to such property described in 1. above is caused by or results from a Covered Cause of Loss.

The Limit of Insurance is the lesser of the number of days or the dollar amount shown in the Schedule of Sub-Limits of Insurance.

We will not pay for loss or damage caused directly or indirectly by picketing, protesting, striking or other action taken by workers, whether employed by you, except for physical damage not excluded by this Policy.

**N.    Leased or Rented Equipment**

We will pay for direct physical loss or damage to Covered Property described below caused by a Covered Cause of Loss.

Covered Property:

1.    Your equipment, including spare parts and accessories, that you lease or rent to your customers; or

2.    Equipment that belongs to others while in your care, custody or control that you lease or rent to your customers.

Property Not Covered under this provision:

1.    Automobiles, motor trucks, tractors, trailers or motorcycles designed and principally used to transport property or persons over public roads;

2.    Cotton pickers, harvester – thresher combines and irrigation equipment;

3.    Property while "underground", underwater, airborne, or waterborne, except while in transit in the custody of a carrier for hire;

4.    Property loaned to your customers or others;

5.    Watercraft or aircraft;

6.    Property that you hold for sale;

7.    Property that you have sold but not delivered;

8.    Property that you have sold under a deferred payment sales agreement; or

9.    Contraband or property in the course of illegal transportation or trade.

**O.    Leasehold Interest**

If Covered Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the policy period and (2) your lease is canceled by a party other than by the you, or by an entity with any common ownership in you, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Covered Property is located, then this policy is extended to cover "The Interest of the Insured as Lessee" (as defined below) or "The Interest of the Insured as Lessor" (as defined below), whichever is applicable, but only for the first three months succeeding the date of the loss or damage and the "Net Lease Interest" (as defined below) shall be paid for the remaining months of the unexpired lease.  Recovery under this additional coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on your interest in:

1.    The amount of bonus paid by you for the acquisition of the lease not recoverable under the terms of the lease;

2.    Improvements and betterments to real property which are not covered under any other section of this policy; and

3.    The amount of advance rental paid by you and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this Paragraph shall mean:

1.    "Interest of the Insured as Lessee" is defined as:

a.    The excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

b.    The rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between you and the lessor.

2.    "Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

3.    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to "The Interest of the Insured as Lessee" or The Interest of the Insured as Lessor".

We shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by your exercising any option to cancel the lease. Furthermore, you shall use due diligence, including all things reasonably practicable, to diminish loss under this additional coverage.

**P.    Lost Key Coverage**

If your keys or key cards used to access buildings or structures described on the Declarations are lost or damaged caused by or resulting from a Covered Cause of Loss, we will pay the cost of replacing the keys or key cards and the repair or replacement of door locks, as required. Coverage includes the cost and expenses to refit a building with new locks and keys after the loss or damage of a master key held in your care, custody and control.

**Q.    Miscellaneous Unnamed Locations**

We will pay for any loss or damage caused by a Covered Cause of Loss at any Miscellaneous Unnamed Location.

For the purpose of this insurance Miscellaneous Unnamed Locations is defined as a location owned, leased or rented by the Insured, but not specified in the Schedule of Locations and not considered Newly Acquired or Constructed Property and which is located within the Coverage Territory described in the policy.

**R.    Newly Acquired or Constructed Property**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 5. Coverage Extensions, a. Newly Acquired or Constructed Property reference to $250,000 in subparagraph (1) is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**S.    Ordinance or Law Coverage – Coverage A, B, and C Combined Limit**

The most we will pay under this Additional Coverage described below for loss or damage in any one "occurrence" is the Sub-Limit shown in the Schedule. This Sub-Limit is the Combined Limit of Insurance for Coverages A, B, and C described below.

Coverage A – Loss to the Undamaged Portion of the Building

In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires the demolition of the undamaged portion of the same building.

Coverage B – Demolition Cost

In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the cost to demolish the building and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property. Coinsurance does not apply to this Additional Coverage.

Coverage C – Increased Cost of Construction

1.    In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased cost to:

      a.     Repair or reconstruct damaged portions of that building; or

      b.     Reconstruct or remodel undamaged portions of that building, whether or not demolition is required

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However,

      a.     This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

      b.     We will not pay for the increased cost of construction if the building is not repaired, reconstructed, or remodeled.

2.     Coinsurance does not apply to this Additional Coverage.

Under this Additional Coverage, we will not pay for:

1.     The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot, dry rot or bacteria.

2.     Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot, dry rot or bacteria.

3.     Any costs due to an ordinance or law that:

      a.     You are required to comply with before the loss, even when the building was undamaged; and

      b.     You failed to comply.

The following Additional Loss Provisions apply to this Additional Coverage:

1.     For loss in value to the undamaged portion of a building to which this Additional Coverage applies, loss payment, including damaged and undamaged portions, will be determined as follows:

If Replacement Cost applies and the property is being repaired or replaced, on the same or another location, we will pay the lesser of:

      a.     The amount you actually spend to repair, rebuild, or reconstruct the building, but not for more than the amount it would cost to restore the building on the same location and to the same height, floor area, style and comparable quality of the original property insured; or

      b.     The Limit of Insurance shown in the Declarations as applicable to the covered Building that is damaged.

If Replacement Cost applies and the property is not repaired or replaced, or if Replacement Cost does not apply, we will pay the lesser of:

a.    The actual cash value of the building at the time of loss; or

b.    The Limit of Insurance shown in the Declarations as applicable to the covered Building.

2.    Loss payment for Demolition Cost will be determined as follows:

We will pay the amount you actually spend to demolish and clear the site of the described premises.

3.    Loss payment for Increased Cost of Construction will be determined as follows:

We will not pay for Increased Cost of Construction:

a.    Until the property is actually repaired, reconstructed, remodeled or replaced at the same or another location; and

b.    Unless the repairs, reconstruction, remodeling or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.  We may, in our sole discretion, extend this period in writing during the two years.

**T.    Outdoor Property**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 5. Coverage Extensions, e. Outdoor Property reference to $1,000, but not more than $250 per tree, shrub or plant is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**U.    Personal Effects and Property of Others**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 5. Coverage Extensions, b. Personal Effects And Property of Others reference to $2,500 at each described premises is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**V.    Pollutant Clean-Up and Removal Coverage**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 4. Additional Coverages, d. Pollutant Clean Up And Removal reference to $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**W.    Professional Fees**

This policy is extended to cover reasonable and necessary "Claim Preparation Costs" (as defined below) incurred by you at our request for the purpose of determining the extent or amount of insured loss or damage as a result of a Covered Cause of Loss under this policy, provided that you obtain our prior written approval for the vendor to be engaged by you.

"Claim Preparation Costs" means:

1. 1The cost of taking inventory and the cost of gathering and preparing other data to substantiate the extent or amount of loss or damage; and

2. 1The cost of services provided by accountants, contractors and engineers solely for the purpose of determining the extent or amount of loss or damage.

"Claim Preparation Costs" does not mean and does not include:

1. Legal fees, charges and expenses;

2. Fees and costs of a public claims adjuster, claim consultant, insurance broker or agent (except forensic accounting services), or any person acting for or on behalf of a public claims adjuster, claim consultant, or insurance broker or agent;

3. Costs associated with negotiation or presentation of any claim or part of a claim that we have advised you  is disputed or denied;

4. Costs associated with establishing that any claim or part of a claim is covered by the policy; or

5. Costs which represent your overhead or operating expense, including salaries of your employees.

**X.     Property Off Premises**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 5. Coverage Extensions, d. PROPERTY OFF-PREMISES, reference to $10,000 in Subparagraph (3) is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

**Y.     Reclaiming, Restoring, or Repairing Land Improvements**

We will pay for expenses resulting from the cost of reclaiming, restoring or repairing land improvements.  Land improvements are defined as any alteration to the natural condition of the land by grading, natural or man-made landscaping, earthen dikes or dams, and additions to land such as signs, pavements, sidewalks, roadways, drainage systems, irrigation systems, or similar works, provided the loss is the result of a Covered Cause of Loss.

**Z.     Reward Reimbursement**

We will pay reward reimbursement for information that leads to a criminal conviction in connection with loss or damage to covered property due to theft, vandalism or "arson".

Definition: "Arson" means the willful and deliberate burning of property.

**AA.   Royalties**

Under the Business Income (And Extra Expense) Coverage Form and the Business Income (Without Extra Expense) Coverage Form, this Policy is extended to cover loss of Business Income sustained by you under a royalty, licensing fee, or commission agreement between you and another party during the "period of restoration" arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this policy to real or personal property of such other party, only if such royalties, fees or commissions are shown as such on the Statement of Values.  When determining the amount payable, we will consider the amount of income derived by you from such agreements before, and the probable amount of income after, the date of loss or damage.

**BB.    Utility Services Coverage – Excluding Transmission and Distribution Lines**

We will pay for loss of or damage to Covered Property caused by an interruption in utility service to the described premises.  The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to any off premises water, communication or power supply services to your business.  Coverage does not apply to overhead transmission lines including distribution lines.  Further, coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to "electronic data", including destruction or corruption of "electronic data".

**CC.    Spoilage**

This policy is extended to cover spoilage as a direct result of a Covered Cause of Loss and subject to the additional exclusions listed below.  We shall be liable for direct physical loss or damage to:

1.    "Perishable goods" due to spoilage;

2.    "Perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

3.    "Perishable goods" due to spoilage caused by a Covered Cause of Loss to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.  If you are unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have been incurred.  Otherwise, payment will be determined in accordance with the Valuation provision of this policy.

"Perishable Goods" means personal property:

1.    Maintained under controlled conditions for its preservation, and

2.    Susceptible to loss or damage if the controlled conditions change.

Additional Exclusions: We shall not be liable for loss or damage caused by or resulting from:

1.    The disconnection of any refrigerating, cooling or humidity control system from the source of power.

2.    The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**DD.    Transit**

You may extend the insurance provided by this policy to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises.  Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

Loss or damage must be caused by or result from one of the following causes of loss:

1.    Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

2.  Vehicle collision, upset or overturn.  Collision means accidental contact of your vehicle with another vehicle or object.  It does not mean your vehicle's contact with the road bed.

3.  Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle.  There must be visible marks of the forced entry.

**EE.   Valuable Papers and Records (Other than Electronic Data)**

Under the Building and Personal Property Coverage Form, A. COVERAGE, paragraph 5. Coverage Extensions, c. Valuable Papers and Records (Other than Electronic Data), reference to $2,000 in subparagraph (4) is deleted and replaced by the Sub-Limit shown in the Schedule of Sub-Limits of Insurance.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 9

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019



## ARCH SPECIALTY INSURANCE COMPANY
(A Missouri Corporation)

NAMED INSURED: SRTJR, LLC and Optima Capital, LLC.

POLICY NUMBER: ESP1000007-01

SCHEDULED LOCATION/PREMISES/BUILDING (If Applicable): **As per schedule of locations on file with the company**

## SCHEDULE OF SUB-LIMITS

This Schedule applies to the Additional Coverages and Coverage Extensions identified by name below but only for which a Sub–Limit has correspondently been inserted.  The Sub-Limit is included within, and not in addition to, the Limits of Insurance shown on the Declarations.

| COVERAGE | SUB-LIMIT |
|---|---|
| Ordinance and Law Coverage D | $100,000 |
| Sewer and Water Drain Back-Up | $25,000 |
| Outdoor Signs | $25,000 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EQUIPMENT BREAKDOWN COVERAGE**

This Endorsement modifies insurance provided under the following:

        BUILDING AND PERSONAL PROPERTY COVERAGE FORM
        CAUSES OF LOSS – BASIC
        CAUSES OF LOSS – BROAD
        CAUSES OF LOSS – SPECIAL FORM
        CONDOMINIUM ASSOCIATION COVERAGE FORM
        CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

| Equipment Breakdown Schedule | |
| --- | --- |
| **Equipment Breakdown Limits of Insurance:** | |
| Perishable Goods | $25,000 Per Breakdown |
| Expediting Expenses | $25,000 Per Breakdown |
| Pollution Clean Up and Removal | $25,000 Per Breakdown |
| Data and Media | $25,000 Per Breakdown |
| Demolition and Increased Cost of Construction | $25,000 Per Breakdown |
| **Deductibles:** | |
| Direct Damage | $5,000 Per Breakdown |
| Business Income and Extra Expense | Included |
| Perishable Goods | Included |
| Utility Interruption – Waiting Period | - hours |
| Other: | |

        The following is added to paragraph A. 4. Additional Coverages in the applicable Coverage Form:

A.    **Equipment Breakdown Coverage**

        1.    We will pay for direct physical loss to Covered Property caused by or resulting from a "breakdown" to "covered equipment".

            With respect to otherwise covered Business Income and Extra Expense, "breakdown" to "covered equipment" will be considered a Covered Cause of Loss.

        2.    **"Breakdown"**

            a.    "Breakdown" means:

                (1)    Failure of pressure or vacuum equipment;

                (2)    Mechanical failure including rupture or bursting caused by centrifugal force; or

                (3)    Electrical failure caused by artificially generated electric current, including arcing;

            that causes direct physical loss or damage to "covered equipment" and necessitates its repair or replacement.

            b.    "Breakdown" does not mean:

(1)    Cracking of any part on an internal combustion gas turbine exposed to the products of combustion;

(2)    Damage to any structure or foundation supporting the "covered equipment" or any of its parts;

(3)    Damage to any vacuum tube, gas tube, or brush;

(4)    Defects, erasures, errors, limitations or viruses in "computer equipment", data, "media" and/or programs including the inability to recognize and process any date or time or provide instructions to "covered equipment".  However, if a "breakdown" ensues, we will pay the ensuing loss or damage not otherwise excluded;

(5)    Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(6)    Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification; or

(7)    The functioning of any safety or protective device.

c.    If an initial "breakdown" causes other "breakdowns", all will be considered one "breakdown".  All "breakdowns that manifest themselves at the same time and are the result of the same cause will also be considered one "breakdown".

3.    **"Covered Equipment"**

a.    "Covered equipment" means any Covered Property that is:

(1)    Equipment designed and built to operate under internal pressure or vacuum other than weight of contents.  For any boiler or fired vessel, the furnace of the "covered equipment" and the gas passages from there to the atmosphere will be considered as outside the "covered equipment";

(2)    Communication equipment and "computer equipment";

(3)    Fiber optic cable; or

(4)    Any other electrical or mechanical equipment that is used in the generation, transmission or utilization of energy.

b.    "Covered equipment" does not mean any:

(1)    Astronomical telescope, cyclotron, nuclear reactor, particle accelerator, satellites and/or spacecraft (including satellite or spacecraft contents and/or their launch sites);

(2)    Catalyst;

(3)    Dragline, power shovel, excavation or construction equipment including any "covered equipment" mounted on or used solely with any dragline, power shovel, excavation or construction equipment;

(4)    Elevator or escalator, but not excluding any electrical machine or apparatus mounted on or used with this equipment;

(5)    Equipment or any part of equipment manufactured by you for sale;

(6)    Felt, wire, screen, mold, form, pattern, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, non-metal part or any part or tool subject to periodic replacement;

(7)    Insulating or refractory material;

(8)    Non-metallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or a Code that has been accepted by the National Board of Boiler and Pressure Vessel Inspectors;

(9)    Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

(10)   Pressure vessels and piping that are buried below ground and require the excavation of materials to inspect, remove, repair or replace;

(11)   Structure, foundation, cabinet or compartment supporting or containing the "covered equipment" or part of the "covered equipment" including penstock, draft tube or well casing;

(12)   Vehicle, aircraft, self-propelled equipment or floating vessel, including any "covered equipment" mounted on or used solely with any vehicle, aircraft, self-propelled equipment or floating vessel; or

(13)   "Media".

4.    **Property Not Covered.**  With regard to the coverage provided by this Endorsement only, A.2.b. in the Coverage Form to which this Endorsement applies is deleted and replaced by the following:

   b.    Animals.

5.    **Equipment Breakdown Coverage Extensions.**  The following coverages also apply to loss or damage caused by or resulting from a "breakdown" to "covered equipment". These Equipment Breakdown Coverage Extensions do not provide additional amounts of insurance.  The limits provided are part of, not in addition to, the Limit of Insurance that applies to the damaged Covered Property.

   a.    **Perishable Goods.**

      (1)    We will pay for:

         (a)    Your loss of "perishable goods" due to spoilage;

         (b)    Your loss of "perishable goods" due to spoilage that is caused by or results from an interruption in utility services that is the direct result of a "breakdown" to "covered equipment" that is owned by a utility, landlord, or other supplier with whom you have a contract to provide you with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam. Coverage for such loss will begin 12 hours after the time the "breakdown" causes the interruption of the utility service; or

         (c)    Your loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

We will also pay any necessary expense you incur to reduce the amount of loss under this coverage. We will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(2)    If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "breakdown", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment Condition.

(3)    The most we will pay for any loss or expense under this Equipment Breakdown Coverage Extension is $25,000 or the Limit of Insurance for Perishable Goods shown on the Equipment Breakdown Schedule, whichever is greater.

b.    **Expediting Expenses.**

(1)    With respect to your damaged Covered Property, we will pay the reasonable extra cost to make temporary repairs and expedite permanent repairs or permanent replacement.

(2)    Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

(3)    The most we will pay for Expediting Expenses is $25,000 or the Limit of Insurance for Expediting Expenses shown on the Equipment Breakdown Schedule, whichever is greater.

c.    **Utility Interruption.** The insurance provided for Business Income and/or Extra Expense, if covered elsewhere in the policy, is extended to apply to loss caused by or resulting from an interruption in utility services that is a direct result of a "breakdown" to "covered equipment" that is owned by a utility, landlord, or other supplier with whom you have a contract to provide you with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

Coverage for Utility Interruption will begin 12 hours, or the time shown for Utility Interruption-Waiting Period in the Equipment Breakdown Schedule, after the time the "breakdown" causes the interruption of the utility service.

d.    **Drying Out.** If electrical "covered equipment" requires drying out as a result of a flood, waves, tides, tidal waves, or overflow of any body of water or their spray, even if driven by wind, we will pay for the direct expense of drying out such electrical "covered equipment".

The most we will pay for such expense under this Equipment Breakdown Coverage Extension is the least of:

(1)    $10,000;

(2)    the Limit of Insurance shown on the Declaration for the applicable covered property; or

(3)    the value of such damaged electrical "covered equipment".

Coverage provided by this extension does not include the cost to replace such equipment or any other loss, damage or expense that is caused by or results directly or indirectly from flood, waves, tides, tidal waves, or overflow of any body of water or their spray, even if driven by wind.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

e. **Pollution Clean Up and Removal.** With regard to coverage provided under this Endorsement only, Additional Coverage A.4.d. in the Coverage Form to which this Endorsement applies is deleted and replaced by the following:

d. We will pay your expense to extract "pollutants" from land or water at the described premises and the cost for clean-up, repair, replacement or disposal of Covered Property at the described premises if the discharge, dispersal, seepage, migration, release or escape of such "pollutants" is caused by or results from a "breakdown" to "covered equipment" that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which such "breakdown" occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land, water or the clean-up, repair, replacement, or disposal of Covered Property.

The most we will pay under this Additional Coverage, including any loss covered under any applicable Business Income or Extra Expense coverage, for the sum of all covered expenses is $25,000 or the Limit of Insurance for Pollution Clean Up and Removal shown on the Equipment Breakdown Schedule, whichever is greater.

The coverage provided by this Additional Coverage does not include loss to "perishable goods" due to contamination from the release of a refrigerant.

f. **Data and Media.** We will pay your cost to research, replace and restore data, including programs and operating systems that are lost or corrupted due to a "breakdown". We will also pay for loss or damage to "media" caused by a "breakdown". The most we will pay under this Coverage Extension for the sum of all covered expenses, including any loss covered under any applicable Business Income and Extra Expense coverage is $25,000 or the Limit of Insurance for Data and Media shown on the Equipment Breakdown Schedule, whichever is greater.

g. **Demolition and Increased Cost of Construction.**

The following applies despite the Ordinance or Law Exclusion. If a "breakdown" to "covered equipment" damages a building that is Covered Property that is insured at replacement cost, and the loss is increased by the enforcement of any laws or ordinances that are in force at the time of the "breakdown" and which regulate the demolition, construction, repair or use of the building or structure the following apply:

(1) We will pay for:

(a) Your actual cost to demolish and clear the site of the undamaged parts of the same building or structure as a consequence of enforcement of an ordinance or law that requires the demolition of such undamaged property; and

(b) Your actual expenditures for increased costs to repair, rebuild, or construct the building. If the building is repaired, rebuilt or constructed, it must be intended for a similar use or occupancy as the current building, unless otherwise required by zoning or land use ordinance or law;

(2) With regard to otherwise covered Business Income and Extra Expense coverage, the "period of restoration" is extended to include the additional period of time required for demolition and to meet the minimum requirement of any ordinance or law enforcement at the time of the "breakdown".

(3)    We will not pay for any:

    (a)    Fine;

    (b)    Liability to a third party;

    (c)    Increase in loss due to a "pollutant"; or

    (d)    Demolition cost until the undamaged portions of the building are actually demolished;

    (e)    Increased construction costs until the building is actually rebuilt and replaced;

    (f)    Increases in loss, excess of the amount required to meet the minimum requirement of any ordinance or law enforcement at the time of the "breakdown"; or

    (g)    Loss due to any ordinance or law that you were required to comply with before the "breakdown", even if the building was undamaged, and with which you failed to comply.

The most we will pay under this Coverage Extension for the sum of all covered expenses, including any loss covered under any applicable Business Income and Extra Expense coverage, is $25,000 or the Limit of Insurance for Demolition and Increased Cost of Construction shown on the Equipment Breakdown Schedule, whichever is greater.

6.    **Equipment Breakdown Exclusions.**    With regard to coverage provided under this Endorsement only, the following changes are made:

a.    The following Exclusions are deleted:

    (1)    In the Causes of Loss – Special Form: B.2.a.; B.2.d.(6); and B.2.e.

    (2)    In the Causes of Loss – Broad Form: B.2.a.; B.2.b.; B.2.c.

    (3)    In the Causes of Loss – Basic Form: B.2.a.; B.2.d.; and B.2.e.

b.    Exclusion B.2.l. from the Causes of Loss – Special Form, is deleted and replaced by the following:

    l.    Discharge, dispersal, seepage, migration, release or escape of "pollutants". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "breakdown" to "covered equipment", we will pay for the loss or damage caused by that "breakdown".

c.    With regard to the Causes of Loss – Special Form, the last paragraph of Exclusion B.2.d. is deleted and replaced by the following:

    But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "breakdown", we will pay the resulting loss or damage not otherwise excluded.

d.    The following exclusions apply to the coverage provided under this Endorsement in addition to the other exclusions, except as deleted in A.6.a. above, in the Coverage Form to which this Endorsement applies.

    We will not pay under this Endorsement for loss or damage caused directly or indirectly by any of the following:

(1) Any of the following tests:

    (a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

    (b) An insulation breakdown test of any type of electrical equipment;

    (c) Any test which subjects the "covered equipment" to greater than maximum allowable operating conditions as identified by the manufacturer of the "covered equipment"

(2) Fire including fire resulting from a "breakdown";

(3) Combustion explosion;

(4) Explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass;

(5) An explosion. However, we will pay for direct loss or damage caused by an explosion of "covered equipment" of a kind specified in a. through f. below, if not otherwise excluded:

    a. Steam boiler;

    b. Electric steam generator;

    c. Steam piping;

    d. Steam turbine;

    e. Steam engine; or

    f. Gas turbine or any other moving or rotating machinery when such explosion is caused by centrifugal force or mechanical breakdown.

(6) With regard to the Causes of Loss – Basic Form and Causes of Loss – Broad Form:

Depletion, deterioration, corrosion, erosion, wear and tear, rust, fungus, decay, wet or dry rot, or mold. However, if a "breakdown" to "covered equipment" results, we will pay the resulting loss or damage not otherwise excluded.

(7) With respect to Utility Interruption and paragraph (1)(b) of Perishable Goods coverage, we will not pay for loss caused by or resulting from: Lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; falling objects; water damage caused by the discharge or leakage of sprinkler system, sewer piping or domestic water piping; water or other means used to extinguish a fire, even when the attempt is unsuccessful; weight of snow, ice or sleet; freezing due to cold weather; molten material; or collapse.

7. **Equipment Breakdown Limitations.**

With regard to this Endorsement only, the following Limitations are deleted from the Causes of Loss – Special Form: C.1.a. and C.1.b.

8. **Limits of Insurance**

a.  The most we will pay for loss or damage in any one "breakdown" is the applicable Limit of Insurance shown in the Declarations.  The limits provided for the Equipment Breakdown Coverage Extensions are part of, not in addition to, the Limit of Insurance shown in the Declarations that applies to the damaged Covered Property.

The coverage provided by this Endorsement is part of, not in addition to, the Limits of Insurance shown in the Declarations.

b.  The most we will pay for water damage that results from a "breakdown" to "covered equipment" is $25,000 for any one "breakdown" This is part of, not in addition to, the Limit of Insurance shown in the Declarations that applies to damaged Covered Property.

9.  **Deductible**

If an amount is shown in the Deductible section of the Equipment Breakdown Schedule, the following will apply; otherwise the deductible shown in the Declaration for the applicable coverage will apply.

Paragraph D. – Deductibles of the applicable coverage form is deleted and replaced by:

a.  In any one "breakdown, we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage.  If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss.  If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

The deductibles listed in the Equipment Breakdown Schedule shall be applied separately to the applicable coverage as follows:

(1)  **Dollar Deductible**

If a dollar deductible is shown in the above schedule, we will first subtract the deductible amount from any loss we would otherwise pay.

(2)  **Multiple per Unit Deductible**

If a multiple of units is shown in the above schedule, the deductible will be calculated as the sum of the multiplier times the number of units specified. (For example: if the deductible is specified as $25/hp for air conditioning units, and a covered 500 hp air conditioning unit suffered a "Breakdown", the deductible will be $25 times 500 hp which equals $12,500.)

(3)  **Time Deductible**

If a time deductible is shown in the above schedule, we will not be liable for any loss under that coverage that occurs during that specified time period immediately following a "Breakdown".  If a time deductible is shown in days, each day shall mean twenty-four consecutive hours.

(4)  **Multiple of Daily Value Deductible**

If a multiple of daily value is shown in the above schedule, this deductible will be calculated as follows:

(a) For the entire premise described in the Declarations where the loss occurred, determine the total amount of Business Income that would have been earned during the "Period of Restoration" had no "Breakdown" taken place.

(b) Divide the result in Paragraph (1) by the number of days the business would have been open during the "Period of Restoration".  The result is the daily value.

(c) Multiply the daily value in Paragraph (2) by the number of daily value multiples shown in the above schedule.  We will first subtract this deductible amount from any loss we would otherwise pay.  We will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

(5) **Percentage of Loss Deductible**

If a deductible is expressed as a percentage of loss in the above schedule, we will not be liable for the indicated percentage of the gross amount of loss or damage insured under the applicable coverage.

(6) **Minimum Or Maximum Deductible**

(a) If:

(i) A minimum dollar amount deductible is shown in the above schedule; and

(ii) The dollar amount of the Multiple per Unit, Multiple of Daily Value or the Percentage of Loss Deductible is less than the Minimum Deductible:

then the Minimum Deductible amount shown in the above schedule will be the applicable deductible.

(b) If:

(i) A maximum dollar amount deductible is shown in the above schedule; and

(ii) The dollar amount of the Multiple per Unit, Multiple of Daily Value or the Percentage of Loss Deductible is greater than the Maximum Deductible;

then the Maximum Deductible amount shown in the above schedule will be the applicable deductible.

b. If more than one deductible applies to a single coverage, then only one deductible, the highest, will apply to that coverage.

10 The following provision applies to the coverage provided by this Endorsement only and in addition to the provisions in the Loss Payment section of the Coverage Form to which this Endorsement applies:

**New Generation.**  You may replace damaged "Covered Equipment" with a newer generation "Covered Equipment" of the same capacity which improves the environment, increases efficiency or enhances safety.  We will pay up to an additional

25% of the covered property damage amount for the "Covered Equipment". This additional amount is included in, not in addition to, the applicable Limit of Insurance for Covered Property.

11. With respect to the coverage provided under this Endorsement, the following are added to the Additional Conditions section of the Coverage Form to which this Endorsement applies:

    a. **Jurisdictional Inspections**

        (1) We agree to provide pressure vessel certificate-of-operation engineering services where:

            (a) The certificate-of-operation is required by state, city or provincial law; and

            (b) The state, city or provincial law permits inspections by insurance company employees.

        (2) If we receive notification of a pressure vessel certificate-of-operation inspection due date less than 30 (thirty) days prior to the expiration of the certificate-of-operation, we will not be responsible for:

            (a) Any fine or other penalty that may be assessed; or

            (b) Any liability that may arise due to the fact that the inspection was not performed prior to the certificate-of-operation due date.

        (3) Certificate-of-operation engineering services will not be provided for any location, other than in the United States of America, Puerto Rico or Canada.

    b. **Suspension**

        (1) Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the coverage provided by this Endorsement.  We will deliver or mail a written notice of suspension to your last known address or the address where the "covered equipment" is located.

        (2) Once suspended in this way, your coverage can be reinstated only by an Endorsement for that "covered equipment".

        (3) If we suspend your coverage, you will get a pro rata refund of premium for that "covered equipment".  But the suspension will be effective even if we have not yet made or offered a refund.

12. With regard to the coverage provided by this Endorsement, the following definitions apply in addition to the definitions provided in the Coverage Form to which this Endorsement applies:

    a. **"Computer equipment"** means your programmable electronic equipment that is used to store, retrieve and process data; and associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission.  It does not include data or "media".

    b. **"Media"** means electronic data processing or storage material such as films, tapes, discs, drums or cells.

      c.    **"Perishable goods"** means personal property maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 10

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED WINDSTORM DEFINITION ENDORSEMENT**

The definition of a Named Windstorm is a Tropical Storm having sustained wind speeds of at least 39 MPH and/or a Hurricane having sustained wind speeds of at least 74 MPH and has been declared by the U.S. National Weather Service to be a Named Tropical Storm or Named Hurricane.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED WINDSTORM PERCENTAGE DEDUCTIBLE ENDORSEMENT
(REPORTED VALUE)**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE FORM
OTHER APPLICABLE INLAND MARINE COVERAGE FORMS
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
CAUSES OF LOSS – NAMED WINDSTORM

**SCHEDULE**

| Premises No. | Bldg. No. | Named Windstorm Deductible Percentage (enter 1%, 2%, 5% or other percent) | Minimum Deductible |
|---|---|---|---|
| All | All | 3% | $25,000 Per Occurrence |

This percentage shown above is subject to the minimum deductible per "occurrence" shown above, if any.

The Named Windstorm Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Named Windstorm, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.  If loss or damage from a covered weather condition other than Named Windstorm occurs, and that loss or damage would not have occurred but for the Named Windstorm, such loss or damage shall be considered to be caused by Named Windstorm and therefore part of the Named Windstorm "occurrence".

The Named Windstorm Deductible applies whenever there is an "occurrence" of Named Windstorm.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy.  If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

**NAMED WINDSTORM DEDUCTIBLE CALCULATION**

**A.**    All Policies

**1.**    A Deductible is calculated separately for, and applies separately to:

    **a.**    Each building, if two or more buildings sustain loss or damage;

    **b.**    The building and to personal property in that building, if both sustain loss or damage;

    **c.**    Personal property at each building, if personal property at two or more buildings sustains loss or damage;

    **d.**    Personal property in the open.

**2.**    We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition – Need for Adequate Insurance or Additional Condition – Need for Full Reports.

**3.**    When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises.

**B.**    Calculation of the Deductible

**1.**    Deductible calculation applicable to the following Coverage Forms:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
DIFFERENCE IN CONDITIONS COVERAGE FORM
OTHER APPLICABLE INLAND MARINE COVERAGE FORMS

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or other percent (as shown in the Schedule) of the value of each unit of insurance of Covered Property at the time and at the location where the physical damage happened, and then only for its proportion of such excess. The value(s) to be used are the latest value(s) shown in the most recent Report of Values on file with us.

However:

    **a.**    If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

    **b.**    If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

**2.**    Deductible calculation applicable to the following forms:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or other percent (as shown in the Schedule) of the full value(s)

that would have been earned in the 12 month period following the "occurrence" by use of the lost or damaged Covered Property, at the premises described in the Declarations where the physical damage happened, plus that proportion of the values at all other locations where loss ensues that was directly affected by use of such lost or damaged Covered Property and that would have been earned in the 12 month period following the "occurrence".

**3.**    The percentages referenced in paragraphs **B.2.** and **B.3.** above are subject to a Minimum Deductible per "occurrence" as shown in the Schedule.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SEWER DRAIN AND SUMP BACKUP COVERAGE**

This endorsement modifies insurance provided under the following forms:

CAUSES OF LOSS – SPECIAL
CAUSES OF LOSS – BASIC
CAUSES OF LOSS – BROAD
CAUSES OF LOSS – FLOOD
CAUSES OF LOSS – WINDSTORM OR HAIL

It is agreed that we will cover loss or damage to Covered Property caused by "Sewer Drain and Sump Backup".

"Sewer Drain and Sump Backup" means water that backs up or overflows from a sewer, drain, sump, sump pump or related equipment.

The most we will pay per occurrence for this Additional Coverage is See Property Coverage Enhancement Endorsement - Broad Form.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 13

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ORDINANCE OR LAW COVERAGE**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**SCHEDULE\***

| Bldg. No./ Prem. No. | Cov. A | Cov. B Limit Of Insur. | Cov. C Limit Of Insur. | Cov. B And C Combined Limit Of Insur. |
|---|---|---|---|---|
| All    /    All | Included | | | $500,000    ** |

\*Information required to complete the Schedule, if not shown above, will be shown in the Declarations.

\*\*Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** and **C**, or if one of these Coverages is not applicable.

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B.** **Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

**1.** The ordinance or law:

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.** **a.** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of or compliance with the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

**c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will

pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**C.**    We will not pay under Coverage **A, B** or **C** of this endorsement for:

    **1.**    Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

    **2.**    The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**D.    Coverage**

    **1.    Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

        With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

        Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

    **2.    Coverage B – Demolition Cost Coverage**

        With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

        The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

    **3.    Coverage C – Increased Cost Of Construction Coverage**

        **a.**    With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

            **(1)**    Repair or reconstruct damaged portions of that building; and/or

            **(2)**    Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

        when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(1)**   This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)**   We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.**   When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.:**

**(1)**   The cost of excavations, grading, backfilling and filling;

**(2)**   Foundation of the building;

**(3)**   Pilings; and

**(4)**   Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

## E.   Loss Payment

**1.**   All following loss payment Provisions, **E.2.** through **E.5.,** are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

**2.**   When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.**   If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**(1)**   The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)**   The Limit of Insurance shown in the Declarations as applicable to the covered building.

**b.**   If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

**(1)**   The actual cash value of the building at the time of loss; or

      **(2)**    The Limit of Insurance shown in the Declarations as applicable to the covered building.

**3.**    Unless Paragraph **E.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

    We will not pay more than the lesser of the following:

    **a.**    The amount you actually spend to demolish and clear the site of the described premises; or

    **b.**    The applicable Limit of Insurance shown for Coverage **B** in the Schedule above.

**4.**    Unless Paragraph **E.5.** applies, loss payment under Coverage **C** – Increased Cost of Construction Coverage will be determined as follows:

    **a.**    We will not pay under Coverage **C:**

        **(1)**    Until the property is actually repaired or replaced, at the same or another premises; and

        **(2)**    Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **b.**    If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)**    The increased cost of construction at the same premises; or

        **(2)**    The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

    **c.**    If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)**    The increased cost of construction at the new premises; or

        **(2)**    The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

**5.**    If a Combined Limit of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

    The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

    **a.**    For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

    **b.**    With respect to the Increased Cost of Construction:

**(1)** We will not pay for the increased cost of construction:

    **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

    **(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

    **1.** You were required to comply with before the loss, even if the building was undamaged; and

    **2.** You failed to comply with.

**H.** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss

- The building has a value of $200,000

- Total direct physical damage to building: $100,000

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value

- Portion of direct physical damage that is covered (caused by wind): $30,000

- Portion of direct physical damage that is not covered (caused by flood): $70,000

- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

Step **1:**

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**I.**   The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 14

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ORDINANCE OR LAW – INCREASED PERIOD OF RESTORATION**

This endorsement modifies insurance provided under the following:

DIFFERENCE IN CONDITIONS COVERAGE FORM
BUSINESS INCOME (WITH EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

A.   If a Covered Cause of Loss occurs to Covered Property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

　　1.   Regulates the construction or repair of any property;

　　2.   Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

　　3.   Is in force at the time of loss.

　　However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of or compliance with any ordinance or law which requires:

　　1.   The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

　　2.   Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

B.   For the purposes of this endorsement only, the "Period of Restoration" definition is deleted and replaced by the following:

　　3.   "Period of Restoration" means the period of time that:

　　　　a.   Begins:

　　　　　　(1)   72 hours after the time of direct physical loss or damage for Business Income coverage; or

　　　　　　(2)   Immediately after the time of direct physical loss or damage for Extra Expense coverage;

　　caused by or resulting from any Covered Cause of Loss at the described premises; and

　　　　b.   Ends on the earlier of:

　　　　　　(1)   The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2)    The date when business is resumed at a new permanent location.

"Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 15

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WARRANTIES**

This endorsement modifies insurance provided under this policy.

**SCHEDULE**

| Premises Number and/or Location Address | Building Number | Warranted Protective Safeguards Symbols Applicable |
|---|---|---|
| All | All | W13 |
| | | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.**    The following is added to the Commercial Property Conditions:

      **Warranted Protective Safeguards**

      **1.**    As a condition of this insurance, you are required to both have in existence (as you or your representative have represented to us or have accepted as a condition for securing coverage under this policy) and to maintain the protective safeguards listed in the Schedule above and as described below.

      **2.**    The protective safeguards to which this endorsement applies are identified by symbols representing the Protective Safeguard described.

**IT IS WARRANTED BY YOU AS A CONDITION PRECEDENT TO THE ACCEPTANCE OF THIS INSURANCE THAT:**

**"W1"**    AUTOMATIC SPRINKLER SYSTEM – The insured premises is protected by a fully functioning "Automatic Sprinkler System" and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control.  You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

        "Automatic Sprinkler System" means: (a) Any automatic fire protective or extinguishing system, including connected sprinklers and discharge nozzles; ducts, pipes, valves and fittings; tanks, their component parts and supports; and pumps and private fire protection mains; and (b) When supplied from an automatic fire protective system, non-automatic fire protective systems; and hydrants, standpipes and outlets.

**"W2"**    CENTRAL STATION SPRINKLER ALARM SYSTEM – The insured premises is protected by a fully functioning Central Station Sprinkler Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W3"**    CENTRAL STATION BURGLAR ALARM SYSTEM – The insured premises is protected by a fully functioning Central Station Burglar Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control.  You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W4"**    CENTRAL STATION FIRE AND/OR SMOKE ALARM SYSTEM – The insured premises is

protected by a fully functioning Central Station Fire And/Or Smoke Alarm System and, based on that protection, you shall exercise due diligence in maintaining, in complete working order, all equipment and services pertaining to its operation which are under your control. You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W5"**     ANSUL OR EQUIVALENT COOKING EXTINGUISHING SYSTEM – Insofar as is within your control, each and every commercial cooking occupancy of any location insured hereunder is protected by an approved ANSUL (or equivalent) chemical extinguishing system, including a hood, grease removal device and duct system, fully functioning and maintained in proper working order at all times during the currency of this policy.
You shall give immediate notice to us of any impairment in or suspension of such equipment or service.

**"W6"**     LOCKED and SECURED – The premises insured under this policy shall be kept locked and secured against unauthorized entry throughout the currency of this policy.

**"W7"**     HEAT MAINTAINED – Heat will be maintained within the insured premises to a minimum of 50 degrees F.

**"W8"**     HEAT MAINTAINED OR PIPES DRAINED – Heat will be maintained within the premises to a minimum 50 degrees Fahrenheit or all pipes drained of all liquids.

**"W9"**     SECURITY SERVICE – Insofar as within your control, the insured premises shall be protected by a contracted on-premises Security Service 24 hours per day / 7 days per week. You shall give immediate notice to us of any impairment in or suspension of such service.

**"W10"**    WATCHMAN – Insofar as is within your control, a contracted on-premises security service, that includes a recording system or watch clock, shall be maintained and making hourly rounds covering the entire building, at such times as the premises are not in actual operation. You shall give immediate notice to us of any impairment in or suspension of such service.

**"W11"**    CARETAKER – The premises insured under this policy will have a caretaker on the premises throughout the currency of this policy.   You shall give immediate notice to us of any impairment in or suspension of such service.

**"W12"**    ROLL DOWN GATE – The premises insured shall be protected by roll down gates.

**"W13"**    Other: No Builders Risk Going on Within Building Including no removal of load bearing walls

**FAILURE TO COMPLY WITH THE WARRANTED PROTECTIVE SAFEGUARDS AS LISTED IN THE SCHEDULE ABOVE SHALL SUSPEND ALL COVERAGE UNDER THIS POLICY FOR ALL PREMISES NOT IN COMPLIANCE, AND THIS SUSPENSION SHALL LAST UNTIL SUCH TIME AS THE PROTECTION OF THE PREMISES MEETS THE WARRANTED CONDITIONS STATED ABOVE.**

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 16

Policy Number: ESP1000007-01

Named Insured: SRTJR, LLC and Optima Capital, LLC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: December 18, 2019

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A.    CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.**    This Coverage Part;

**2.**    The Covered Property;

**3.**    Your interest in the Covered Property; or

**4.**    A claim under this Coverage Part.

**B.    CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C.    INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D.    LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.**    There has been full compliance with all of the terms of this Coverage Part; and

**2.**    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E.    LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F.    NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G.     OTHER INSURANCE**

 **1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

 **2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H.     POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

 **1.** We cover loss or damage commencing:

  **a.** During the policy period shown in the Declarations; and

  **b.** Within the coverage territory.

 **2.** The coverage territory is:

  **a.** The United States of America (including its territories and possessions); and

  **b.** Puerto Rico;

 unless otherwise stated within the applicable Coverage Form or an endorsement to the policy.

**I.     TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

 **1.** Prior to a loss to your Covered Property or Covered Income.

 **2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

  **a.** Someone insured by this insurance;

  **b.** A business firm:

   **(1)** Owned or controlled by you; or

   **(2)** That owns or controls you; or

  **c.** Your tenant.

This will not restrict your insurance.

**IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                                   Case No.: 2024- CA-

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or Petition in the above-styled cause upon the Defendant:

**Arch Specialty Insurance Company
c/o Chief Financial Officer as Registered Agent
200 E. Gaines Street
Tallahassee, FL 32399**

      Each Defendant is hereby required to serve written defenses to said Complaint or Petition on Plaintiff's attorney, whose name and address is:

**GOEDE, DEBOEST & CROSS, PLLC**
Callie Frey, Esq.
6609 Willow Park Drive, Second Floor
Naples, FL 34109
Telephone No. 239/ 331-5100
Email: CFrey@gadclaw.com; ABroadwell@gadclaw.com
JDelgado@gadclaw.com

within 20 days after service of this Summons upon that Defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

      WITNESS my hand and the seal of said Court on _____, 2024.

                                     Pam Childers, CLERK OF COURT

(SEAL)                             By:_____
                             As Deputy Clerk

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**SRTJR LLC**   ,et al.

      PLAINTIFF,

Vs.

                                      CASE NO:   **2024 CA 000051**

                                      DIVISION:   **F-CIVIL**

  **ARCH SPECIALTY INSURANCE COMPANY**

      DEFENDANT,

### SUMMONS

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **ARCH SPECIALTY INSURANCE COMPANY  C/O CHIEF FINANCIAL OFFICER AS REGISTERED AGENT 200 E. GAINES STREET TALLAHASSEE, FL 32399**

Each defendant is hereby required to serve written defenses to said complaint on

      plaintiff's attorney(s), whose address is

      **CALLIE FREY**
      **6609 WILLOW PARK DRIVE**
      **2ND FLOOR**
      **NAPLES, FL 34109**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **18th day of January, 2024**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By:  _M̌ichaela Craubart̸_

      Deputy Clerk

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days.  When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

CASUM2053P

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL DIVISION**

**SRTJR LLC, et al.**
        Plaintiff,                      CASE NO.:   **2024 CA 000051**

VS.                               DIVISION:   **F-CIVIL**

**ARCH SPECIALTY INSURANCE COMPANY**
        Defendant(s),

### AMENDED ORDER TO PLAINTIFF REGARDING REQUIRED REPORTING

THIS CAUSE, having come before the Court *sua sponte* upon the filing of this action and pursuant to First Judicial Circuit Administrative Order No. 2021-12, it is hereby,

ORDERED and ADJUDGED that the Plaintiff **shall** do the following:

1. Review and become familiar with First Judicial Circuit Administrative Order No. 2021-12 (Civil Case Management Plan).

2. Within 5 days of service of the complaint on the last of all named Defendants file a Notice of Final Service with the Court that includes the following:
   a. Notice that the last of all named Defendants to be served has been served and the date of said service.
   b. A proposal as to whether the case is complex under Fla. R. Civ. P. 1.201, streamlined, or general as defined in First Judicial Circuit Administrative Order No. 2021-12 and a statement as to whether the Defendant concurs in the proposed designation.

3. Upon filing the Notice of Final Service required in paragraph 2, the Plaintiff shall also send a copy of said Notice to the **assigned** Judge's Judicial Assistant via the Proposed Documents function of the ePortal.

4. Failure of the Plaintiff to strictly comply with this Order shall subject the Plaintiff to appropriate sanctions including, but not limited to, the striking of pleadings or dismissal of this action without prejudice.

**DONE AND ORDERED** in Chambers at Pensacola, Florida this 4th day of August, 2021

                             /s/ Jan Shackelford

                             JAN SHACKELFORD
                            ADMINISTRATIVE JUDGE
                            ESCAMBIA COUNTY



CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

| | |
|---|---|
| SRTJR, LLC, AND OPTIMA CAPITAL, LLC | **CASE #:** 2024 CA 000051 |
| | **COURT:** 1ST JUDICIAL CIRCUIT |
| | **COUNTY:** ESCAMBIA |
| PLAINTIFF(S) | **DFS-SOP #:** 24-000024238 |
| VS. | |
| ARCH SPECIALTY INSURANCE COMPANY | |
| DEFENDANT(S) | |

_____/

SUMMONS, COMPLAINT, CIVIL COVER SHEET, ORDER TO PLAINTIFF REGARDING REQUIRED REPORTING

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Friday, January 19, 2024 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, January 22, 2024 to the designated agent for the named entity as shown below.

      ARCH SPECIALTY INSURANCE COMPANY
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

Jimmy Patronis
Chief Financial Officer

AMANDA BROADWELL
ATTORNEY
GOEDE, ADAMCZYK, DEBOEST & CROSS, PLLC
6609 WILLOW PARK DRIVE
SECOND FLOOR
NAPLES, FL 34109

AC2

Case 3:24-cv-00243-TKW-ZCB    Document 1-1    Filed 05/30/24    Page 129 of 188

**IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                        Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFF'S NOTICE OF FINAL SERVICE

      Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC, give notice that all Defendant(s) have been served. The sole Defendant, ARCH SPECIALTY INSURANCE COMPANY, was served on January 22, 2024.

      Plaintiffs propose this case be designated General pursuant to First Judicial Circuit Administrative Order No. 2021-12. The undersigned has conferred with counsel for Defendant, Christopher Ramey, who concurs with the proposed designation.

                                        **GOEDE, DEBOEST & CROSS, PLLC**

                                        By: /s/ *Callie Frey*_____

                                        Callie Frey, Esq.
                                        Florida Bar No. 1039028
                                        Kurtis J. Keefer, Esq.
                                        Florida Bar No. 668011
                                        Amanda Broadwell, Esq.
                                        Florida Bar No. 111388
                                        ABroadwell@gadclaw.com
                                        CFrey@gadclaw.com
                                        Kkeefer@gadclaw.com
                                        JDelgado@gadclaw.com
                                        6609 Willow Park Drive, Suite 201
                                        Naples, FL 34109
                                        (239) 331-5100 – Telephone
                                        (239) 260-7677 – Facsimile
                                        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 30th day of January, 2024, I electronically filed the foregoing with the

Florida Courts E-Filing Portal. The foregoing is also available upon request from the undersigned

or the clerk of the court. The forgoing was also sent to:

<u>VIA U.S. Mail and E-Mail:</u>
Christopher Ramey, Esq.
Butler Wiehmuller Katz Craig LLP
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
cramey@butler.legal
mmeconnahey@butler.legal
hkerr@butler.legal
clugo@butler.legal

GOEDE, DEBOEST & CROSS, PLLC

By: /s/ *Callie Frey*
Callie Frey, Esq.
Florida Bar No. 1039028

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT**
**IN AND FOR ESCAMBIA COUNTY, FLORIDA**
**CIVIL DIVISION**

**SRTJR LLC and OPTIMA CAPITAL LLC**
    **Plaintiffs,**

**vs.**                                            **Case No.: 2024 CA 000051**
                                                    **Division: F-CIVIL**

**ARCH SPECIALTY INSURANCE COMPANY**
    **Defendant.**

## INITIAL CASE MANAGEMENT ORDER – GENERAL

As outlined in Administrative Order 2021-12, the Court issues this case management order to facilitate the timely, fair, and effective resolution of this matter.

The initial complaint was filed on **January 16, 2024.** The last named defendant has been served with the complaint.

Fact and expert discovery should be completed no later than **April 10, 2025.**

Objections to pleadings and dispositive pretrial motions should be resolved within 45 days of the filing of said objections/motions.

Mediation should be completed no later than **April 10, 2025.**

The projected trial date is **July 2025.** <u>A firm trial date will be ordered</u> when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440.

The schedule of deadlines herein will be strictly adhered to by the parties unless changes are otherwise agreed to by the parties and approved by the Court. The Court will consider a request to approve changes to these deadlines upon a showing of good cause by either party based on matters arising from an emergency or unanticipated unavailability. However, unnecessary delays in completing discovery or lack of planning for unavailability will not constitute good cause for a change to these deadlines. The failure to abide by these deadlines may result in sanctions.

        **DONE AND ORDERED** in Chambers in Pensacola, Escambia County, Florida.

02/02/2024 11:56:22
2024 CA 000051

signed by CIRCUIT COURT JUDGE AMY P. BRODERSEN  02/02/2024 11:56:22 S7dyeBjl

**Circuit Court Judge**

**Per Administrative Directive ESCAD2021-03, "In cases wherein one party is unrepresented (pro se), it is the responsibility of the sole attorney in the case to serve within five business days this [order or judgment] upon any pro se party who does not have access to and is not a registered user of the Florida Courts e-Filing Portal."**

**SERVICE LIST:**

**Plaintiffs:**
SRTJR LLC and OPTIMA CAPITAL LLC

**Attorney for the Plaintiffs:**
CALLIE FREY
cfrey@gadclaw.com

**Defendant:**
ARCH SPECIALTY INSURANCE COMPANY

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC and OPTIMA CAPITAL, LLC,

       Plaintiffs,                    Case No.: 2024-CA-000051

vs.

ARCH SPECIALTY INSURANCE COMPANY,

       Defendant.

_____/

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND DEMAND FOR
JURY TRIAL**

       Defendants, ARCH SPECIALTY INSURANCE COMPANY ("Arch") responds to
Plaintiffs' Complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

       1.      Admitted for jurisdictional purposes only. Otherwise, denied.

       2.      Admitted that Plaintiffs own the subject property located at 6870 and 6895 North
9th Ave., Pensacola, FL 32505 (the "property"). Otherwise, denied.

       3.      Admitted that Arch is a properly authorized eligible surplus lines insurer that is a
Missouri corporation with a principal place of business in New Jersey. Further admitted that Arch
conducts business in Escambia County, Florida. Further admitted that Arch issued policy number
ESP1000007-01 (the "policy") to Plaintiffs thereby providing coverage for the property subject to
the terms, conditions, limitations, and exclusions contained therein. Otherwise, denied.

       4.      Admitted for jurisdictional and venue purposes only. Otherwise, denied.

**ALLEGATION OF FACTS**

Arch reincorporates its responses to paragraphs 1 through 4 as if fully set forth herein.

5.     Admitted that the policy identified an effective date range of December 18, 2019 to December 18, 2020.  Further admitted that Plaintiffs purport "Exhibit A" to be a complete copy of the policy.  Otherwise, denied.

6.     Admitted that Plaintiffs alleged a Hurricane Sally loss occurring on or around September 16, 2020.  Further admitted that the policy speaks for itself.  Otherwise, denied.

7.     Admitted that Arch assigned claim number 000013542810 upon receipt of Plaintiffs' claim.  Otherwise, denied.

8.     Admitted that Arch duly investigated the loss and declined to extend coverage for Plaintiffs' claim.  Otherwise, denied.

9.     Without knowledge, therefore denied.

10.     Denied.

11.     Denied.  Specifically, Plaintiffs failed to provide prompt notice of the loss and did not cooperate with its "Duties In The Event of Loss Or Damage" as further detailed below.  Additionally, the property failed to suffer a covered cause of loss.

## COUNT I – BREACH OF CONTRACT

12.     Arch reincorporates its responses to paragraphs 1 through 11 as if fully set forth herein.

13.     Admitted that Plaintiffs are the named insureds under the policy.  Further admitted that Plaintiffs alleged a Hurricane Sally loss occurring on or around September 16, 2020 and that the policy identified an effective date range of December 18, 2019 to December 18, 2020.  Further admitted that the policy speaks for itself.  Otherwise, denied.

14.     Denied.

15.     Denied.

2

16.    Denied.

17.    Denied.

18.    Denied.

## **AFFIRMATIVE DEFENSES**

## **FIRST AFFIRMATIVE DEFENSE**

The policy required Plaintiffs to give prompt notice of any loss or damage pursuant to the policy's "Duties In the Event Of Loss Or Damage" provision:

**E.    Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\*\*\*

**3.    Duties In the Event of Loss Or Damage**

**a.**    You must see that the following are done in the event of loss or damage to Covered Property.

(2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

(3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

\*\*\*

The property is comprised of two separate buildings located at 6870 ("Building 1") and 6895 ("Building 2") North 9th Ave., Pensacola, Florida 32504.  Plaintiffs alleged that the loss occurred on September 16, 2020.  When Plaintiffs first reported their claim on September 17, 2020, Plaintiffs only reported damages to Building 1.  Arch's independent adjuster inspected Building 1 on September 25, 2020.  Arch's engineer further inspected on November 20, 2020.  Arch ultimately denied coverage for Building 1 on July 16, 2021.

3

At a re-inspection conducted at Plaintiffs' request on August 23, 2021, Plaintiffs reported damages to Building 2 for the first time nearly a year after the alleged loss occurred.  This delay in reporting prejudiced Arch's ability to fully investigate the alleged loss in violation of the above policy provision.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs failed to comply with their "Duties In the Event Of Loss Or Damage" by failing to provide information and documentation requested by Arch before filing suit.  The relative policy language is:

### COMMERCIAL PROPERTY CONDITIONS

* * *

**D.    LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.**    There has been full compliance with all of the terms of this Coverage Part;

* * *

**E.    Loss Conditions**

* * *

**3.    Duties In The Event Of Loss Or Damage**

**a.**    You must see that the following are done in the event of loss or damage to Covered Property:

* * *

**(5)**    At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

**(6)**    As often as may be reasonably required, permit us to inspect the

4

> property proving the loss or damage and examine your books and records.
>
> Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

* * *

> **(8)**    Cooperate with us in the investigation or settlement of the claim.

* * *

On September 1, 2022, Arch took the Examination Under Oath of Plaintiffs.    During the Examination Under Oath, Plaintiffs' representative, Robert Bell, explained there were certain areas of the claim he was unfamiliar with.  Mr. Bell additionally explained that most of Plaintiffs' tenants completed various interior repairs at their own expense pursuant to their responsibilities under their respective leases with Plaintiffs.  Mr. Bell further explained that the scope of certain repairs detailed in the two Phoenix Claims Consulting repair estimates submitted by Plaintiffs on March 31, 2022 (and upon which Plaintiffs' claim valuation is based) may not be in line with actual costs incurred at that time.  Given these issues, on November 4, 2022, Arch requested the following information and documentation related to Plaintiffs' Examination Under Oath testimony:

1.    Any and all photographs and videotapes in existence which may depict the condition of the property prior to Hurricane Sally.  This request includes, but is not limited to, the interiors and exteriors of both the Ashley building and the Richey's building.

2.    Any and all photographs or videotapes of the property that may have been taken directly  after Hurricane Sally which may evidence any storm-related damages. The request includes but is not limited to the interiors and exteriors of both the Ashley building and the Richey's building.

3.    Any and all emails, written memos, maintenance records, damage reports, logs,  etc.  which  would  evidence  tenant  complaints  or  reports  of

5

maintenance issues and/or damages at either building prior to Hurricane Sally.

4.    Any and all emails, written memos, maintenance records, damage reports, logs, etc. which would evidence tenant complaints or reports of damage to either building that was allegedly caused by Hurricane Sally.

5.    Any and all invoices, bills, receipts, and/or related documents evidencing any any reimbursments made to the tenants of either building for storm-related repairs.

6.    Copies of tenant lease agreements which may evidence which damages are the responsibility of the tenants versus the insured(s).

7.    Any and all invoices, bills, receipts, and related documents evidencing any post-storm work that may have been performed to the exteriors of the Richey's Building. This request includes, but is not limited to, documentation to evidence roof repairs and stucco repairs to the Richey's building.

8.    Any and all invoices, bills, receipts, and related documents which may evidence the insured's incurred costs for storm-related repairs to the interior units of both the Ashley and Richey's building.

9.    All documents, reports, correspondences, notes, etc. which may explain the scope of the insured's claim for damages to the windows and doors at both the Ashley and Richey's buildings (i.e. whether all windows and doors are being claimed or just a portion).

10.    Any additional documents of whatever nature you believe support the damages being claimed.

Plaintiffs provided some responsive documentation on May 3, 2023. However, many of the requests remained outstanding. Therefore, Arch followed up on the requests on July 17, 2023. Arch additionally requested that Plaintiffs modify their presented claim valuation to reflect 1) actual bids to complete repairs and 2) all interior repairs that were incurred by their tenants pursuant to their lease agreements. In response to the follow-up letter, Plaintiffs failed to provide any additional documentation. Plaintiffs further refused to modify their claim valuation. This lack of cooperation is in violation of the duties listed above.

**THIRD AFFIRMATIVE DEFENSE**

The policy excludes damage caused by wear and tear, rust, corrosion, decay, deterioration, and latent defects as follows:

### CAUSES OF LOSS – SPECIAL FORM

\*\*\*

**B.    Exclusions**

\*\*\*

2.    We will not pay for loss or damage caused by or resulting from any of the following:

    d.    **(1)**    Wear and tear;

        **(2)**    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\* \* \*

Arch engaged HAAG Engineering ("HAAG") to investigate the damage and assess the cause of loss. HAAG initially inspected Building 1 on November 20, 2020 and completed a report on December 28, 2020. HAAG inspected again August 23, 2021 after Plaintiffs reported additional damages and completed a supplemental report on October 5, 2021. In each of the reports, HAAG explained that the water infiltration into the interior spaces of the property was the result of aged and failing roofing systems on the buildings. Such damages are excluded by the policy. These findings were also explained in Arch's July 16, 2021 and February 5, 2024 coverage position letters.

### <u>FOURTH AFFIRMATIVE DEFENSE</u>

The policy excludes damages caused by faulty, inadequate, or defective design, workmanship, or construction:

    **3.**    We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

* * *

    **c.**    Faulty, inadequate or defective:

        * * *

        **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)**    Materials used in repair, construction, renovation or remodeling;

        **(4)**    Maintenance;

    of part or all of any property on or off the described premises.

        * * *

HAAG additionally found excluded items including installation issues on the roofs, an absence of effective drainage, and long-term maintenance deficiencies. Arch explained how this exclusion applied in its July 16, 2021 and February 5, 2024 coverage position letters.

## **FIFTH AFFIRMATIVE DEFENSE**

The policy contains a limitation that damages to the interior of any building or structure caused by or resulting from rain, whether wind-driven or not, are not covered unless the building or structure first sustains a Covered Cause of Loss to its roof or walls through which the rain enters pursuant to the following policy language:

**C.**    **Limitations**

    The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.**    We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

        * * *

   **c.**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        **(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        **(2)**    The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

\* \* \*

HAAG did not find wind-related damages to the exterior of the property. Therefore, the water infiltration into the interior spaces was the result of the failed and aged roof system as well as other pre-existing openings identified by HAAG. Such damages are excluded or limited by the above provision of the policy.

## SIXTH AFFIRMATIVE DEFENSE

In the event that it is determined the damage to the insured premises is attributable to a covered peril and is deemed a covered loss, payment for the damage will be issued to those entitled to payment under the terms and conditions of the policy including any applicable clause that requires a mortgage holder, additional insured, assignee, or any other necessary party to be included on any payment.

## SEVENTH AFFIRMATIVE DEFENSE

The policy contains certain requirements for payment of a covered loss at replacement cost value, where applicable. The policy language regarding payment for replacement cost would become applicable if Plaintiffs' claimed damages are deemed covered. The policy requires that for replacement cost value to apply, the damaged property must actually be repaired or replaced; and the repair or replacement is made as soon as reasonably possible after the loss or damage.

### EIGHTH AFFIRMATIVE DEFENSE

Should Plaintiffs' loss be deemed covered, the policy's Named Windstorm Deductible would apply.  Pursuant to the policy's Named Windstorm Percentage Deductible Endorsement, form 00 EXP0195 00 03 15, there is a 3% named windstorm deductible totaling $294,642.00 for Building 1 and $84,618.00 for Building 2.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs did not elect to make a claim at actual cash value before filing suit, so they are not entitled to actual cash value.  The policy provides the following:

**G.    Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

\* \* \*

**3.    Replacement Cost**

\* \* \*

**c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

\* \* \*

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs did not submit or substantiate a claim for ordinance or law.  To the extent Plaintiffs make a claim for ordinance or loss, form 00 EXP0105 00 08 14 would apply. However, Arch would be prejudiced by the presentation of such a claim for the first time during litigation that would be in breach of policy terms.

## DEMAND FOR JURY TRIAL

Arch hereby demands a trial by jury on all issues so triable.

WHEREFORE, Defendant, ARCH SPECIALTY INSURANCE COMPANY, respectfully requests judgment in its favor, costs of this action, and such other relief as this Court deems relief that this Court deems appropriate under the circumstances.

BUTLER WEIHMULLER KATZ CRAIG LLP

CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.: 0044808
cramey@butler.legal
MADELINE S. MECONNAHEY, ESQ.
Florida Bar No.: 1033019
mmeconnahey@butler.legal
Secondary:    hkerr@butler.legal
                    ebarker@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Callie Frey, Esq.
Kurtis J. Keefer, Esq.
Amanda Broadwell, Esq.
Goede, DeBoest & Cross, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
*Attorney's for Plaintiff*

by e-Portal on February 8, 2024.

_____
MADELINE S. MECONNAHEY, ESQ.

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

SRTJR, LLC and OPTIMA CAPITAL, LLC,

Plaintiffs,                                         Case No.: 2024-CA-000051

vs.

ARCH SPECIALTY INSURANCE COMPANY,

     Defendant.

_____/

**DEFENDANT'S NOTICE OF SERVING
FIRST SET OF INTERROGATORIES TO PLAINTIFFS**

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.340, hereby files its notice of serving Defendant's First Set of Interrogatories to Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC, numbered 1 through 5, which are to be answered within thirty (30) days after service, by Plaintiffs, in writing and under oath, inserting said answers upon the original and serving the original on Defendant's counsel pursuant to the Florida Rules of Civil Procedure.

                        BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
MADELINE S. MECONNAHEY, ESQ.
Florida Bar No.:  1033019
mmeconnahey@butler.legal
Secondary:   hkerr@butler.legal
               ebarker@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602

Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
Attorneys for Defendant, ARCH SPECIALTY
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that the foregoing Notice has been furnished by e-Portal and that the foregoing Notice and Interrogatories have been furnished to the above-named addressee(s) and to the following by e-mail on February 22, 2024:

Callie Frey, Esq.
Florida Bar No. 1039028
CFrey@gadclaw.com
Kurtis J. Keefer, Esq.
Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
ABroadwell@gadclaw.com
Secondary:  JDelgado@gadclaw.com
GOEDE, DEBOEST & CROSS, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
Attorneys for the Plaintiffs, SRTJR, LLC
and OPTIMA CAPITAL, LLC


_____
 MADELINE S. MECONNAHEY, ESQ.

## **INSTRUCTIONS**

1.      You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Interrogatory. Documents are to be produced in full and unexpurgated form.

2.      If any documents covered by this Interrogatory are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (e.g., letter, memorandum, etc.) together with the following information with respect to any such document withheld:   author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Interrogatory to which such document relates.

3.      If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

4.      In the event that any document called for by this Interrogatory has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information:   author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

5.      All objections to any category of documents to be produced pursuant to this Interrogatory or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

6.      Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

7.      Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiffs, if any.

## DEFINITIONS

1.  "Plaintiffs," and/or "Insureds" means SRTJR, LLC and OPTIMA CAPITAL, LLC, their affiliates, agents, employees and representatives.

2.  "ARCH," and/or "Insurer" means Defendant, ARCH SPECIALTY INSURANCE COMPANY, its affiliates, agents, employees and representatives.

3.  The "Subject Property" means the property located at 6870 North 9th Avenue, Pensacola, Florida 32504.

4.  The "Subject Claim" shall refer to Claim # 000013542810, with a date of loss of September 16, 2020.

5.  The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

6.  The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded. It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

7.  The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without

limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

8.     The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

9.     "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

10.    The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

11.    All other words have their plain and ordinary meaning.

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

SRTJR, LLC and OPTIMA CAPITAL, LLC,

Plaintiffs,                                    Case No.: 2024-CA-000051

vs.

ARCH SPECIALTY INSURANCE COMPANY,

        Defendant.
_____/

## DEFENDANT'S FIRST SET OF INTERROGATORIES

1.    Please provide a specific dollar amount reflecting the damages you are seeking for the subject claim and identify all reports, estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER:**

2.    Please provide a specific dollar amount reflecting any and all repairs, renovations or modifications made to correct the damages you are seeking for the subject claim and identify all documents supporting or demonstrating your incurred expenses for these repairs.

**ANSWER:**

3.    Aside from those damages identified in interrogatories 1 and 2 above, please state whether you are seeking any other damages in this litigation and, if so,

6

describe in detail the nature of these damages, the basis for seeking these damages, and identify in detail all estimates, proposals, invoices, statements, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER:**

4.    Please identify the current members of SRTJR, LLC.  Please also identify the address that is each members' domicile.  If any member of SRTJR, LLC is also a limited liability company, unincorporated entity, or trust, please identify each member, beneficiary, and trustee of that limited liability company, unincorporated entity, or trust as well as each domicile.

**ANSWER:**

5.    Please identify the current members of OPTIMA CAPITAL, LLC.  Please also identify the address that is each members' domicile.  If any member of OPTIMA CAPITAL, LLC is also a limited liability company, unincorporated entity, or trust, please identify each member, beneficiary, and trustee of that limited liability company, unincorporated entity, or trust as well as each domicile.

**ANSWER:**

SRTJR, LLC

By: _____

Print Name: _____

Title: _____

## **ACKNOWLEDGMENT**

STATE OF FLORIDA

COUNTY OF

     BEFORE ME, the undersigned authority, personally appeared

_____ on behalf of SRTJR, LLC, who is personally known to me

**OR** who has produced _____ as identification, and who, after

first being duly sworn, deposes and says that he/she has read the foregoing Answers to

Second Interrogatories which were propounded to him/her by the _____

and to the best of his/her knowledge and belief are true and correct.

     SWORN TO AND SUBSCRIBED before me, this _____ day of _____,

2024.

     *List type of identification produced or "N/A," whichever is applicable.*

(SEAL)

_____
NOTARY PUBLIC

State of _____ at Large

My Commission Expires:

OPTIMA CAPITAL, LLC

By: _____

Print Name: _____

Title: _____

## **ACKNOWLEDGMENT**

STATE OF FLORIDA

COUNTY OF

BEFORE ME, the undersigned authority, personally appeared _____ on behalf of OPTIMA CAPITAL, LLC, who is personally known to me **OR** who has produced _____ as identification, and who, after first being duly sworn, deposes and says that he/she has read the foregoing Answers to Second Interrogatories which were propounded to him/her by the _____ and to the best of his/her knowledge and belief are true and correct.

SWORN TO AND SUBSCRIBED before me, this _____ day of _____, 2024.

*List type of identification produced or "N/A," whichever is applicable.*

(SEAL)

_____

NOTARY PUBLIC

State of _____ at Large

My Commission Expires:

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

SRTJR, LLC and OPTIMA CAPITAL, LLC,

Plaintiffs,                                  Case No.: 2024-CA-000051

vs.

ARCH SPECIALTY INSURANCE COMPANY,

        Defendant.
_____/

### **DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFFS**

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel, hereby requests that the Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC, produce a copy of the documents listed on the attached Exhibit "A," **within thirty (30) days of service hereof**, at the offices of BUTLER WEIHMULLER KATZ CRAIG LLP, 400 N. Ashley Drive, Suite 2300, Tampa, Florida 33602, where said documents shall be left for a reasonable period of time for copying or reproduction.

The Plaintiffs will be in compliance with this Request for Production if said Plaintiffs provide to the undersigned, by mail, a complete and legible copy of the requested items prior to the date fixed for production.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
MADELINE S. MECONNAHEY, ESQ.
Florida Bar No.:  1033019
mmeconnahey@butler.legal
Secondary:  hkerr@butler.legal
                     ebarker@butler.legal

400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Defendant, ARCH SPECIALTY
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy herein has been furnished to:

Callie Frey, Esq.
Florida Bar No. 1039028
CFrey@gadclaw.com
Kurtis J. Keefer, Esq.
Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
ABroadwell@gadclaw.com
Secondary:  JDelgado@gadclaw.com
GOEDE, DEBOEST & CROSS, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
Attorneys for the Plaintiffs, SRTJR, LLC
and OPTIMA CAPITAL, LLC

via E-Portal on February 22, 2024.

_____
MADELINE S. MECONNAHEY, ESQ.

2

## <u>INSTRUCTIONS</u>

1.      You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Request.  Documents are to be produced in full and unexpurgated form.

2.      This Request shall be deemed continuing so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.      If any documents covered by this Request are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced identifying each such document for which the privilege is claimed specifically by its nature (<u>e.g.</u>, letter, memorandum, etc.) together with the following information with respect to any such document withheld:  author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Request to which such document relates.

4.      If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.      In the event that any document called for by this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.      All objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by this Court.

7.      Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8.     Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiffs, if any.

9.     This Request for Production of Documents shall be deemed to be continuing so as to require further and supplemental responses as specified in the Florida Rules of Civil Procedure.

## **DEFINITIONS**

1.  "Plaintiffs," and/or "Insureds" means SRTJR, LLC and OPTIMA CAPITAL, LLC, their affiliates, agents, employees and representatives.

2.  "ARCH," and/or "Insurer" means Defendant, ARCH SPECIALTY INSURANCE COMPANY, its affiliates, agents, employees and representatives.

3.  The "Subject Property" means the property located at 6870 North 9th Avenue, Pensacola, Florida 32504.

4.  The "Subject Claim" shall refer to Claim # 000013542810, with a date of loss of September 16, 2020.

5.  The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys) acting or purporting to act on behalf of the person or entity.

6.  The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request.  "Document" as used herein shall be construed broadly to include all documents and things within the scope of the Florida Rules of Civil Procedure and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded.  It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

7.  The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means.  The term "communication" shall include, without

limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

8.    The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

9.    "Person" means a natural person, firm, association, partnership, corporation or other firm of legal or business entity, public or private.

10.   The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, without limitation."

11.   All other words have their plain and ordinary meaning.

4

## EXHIBIT "A"

1.    All estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or all other documents concerning the damages you are seeking in your insurance claim.

2.    All contracts, change orders, proposals, invoices, receipts, statements, cancelled checks, investigative reports and all other records demonstrating repairs, renovations, modifications, or additions performed to the Subject Property from the date of purchase to the present date.

3.    All records of expenses you have incurred that are part of your insurance claim.

4.    All documents provided by any third party to the Plaintiffs or their agents and/or representatives regarding the claimed damage to the Subject Property.

5.    All appraisals, inspections, disclosures, or warranties obtained or provided pertaining to the Subject Property.

6.    All documents the Plaintiffs contend support its insurance claim and complaint.

7.    All documents supporting or demonstrating any awards, settlements and/or payments received from ARCH or any other source pertaining to the damages you are seeking in the insurance claim.

8.    All documents supporting or demonstrating all insurance claims made by you and/or your representatives for any type of damage associated with Subject Property.

9.    All photographs, diagram, or videos, which depict the alleged damage at the Subject Property, on or after the claimed date of loss.

10.    All photographs, diagram, or videos, which show the condition of the Subject Property, prior to the claimed date of loss.

11.    All documents identified, referenced, relied upon or indicated in Plaintiffs' Answers to Defendant's First Set of Interrogatories.

12.    All documents that evidence any ownership or other controlling or possessory interest by the members of SRTJR, LLC.

13.    All documents that evidence any ownership or other controlling or possessory interest by the members OPTIMA CAPITAL, LLC.

IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                      Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS, SRTJR, LLC AND OPTIMA CAPITAL, LLC'S, REPLY TO DEFENDANT'S AFFIRMATIVE DEFENSES

Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC, ("Plaintiffs"), hereby reply to

ARCH SPECIALTY INSURANCE COMPANY ("ARCH") Affirmative Defenses as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's first affirmative and demands strict proof thereof. Arch's first

affirmative defense fails as Arch had the opportunity to inspect both buildings upon notice of the

claim. Furthermore, even assuming a notice was late, Arch fails to identify any prejudice which

would preclude recovery.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's second affirmative and demands strict proof thereof. Arch's second

affirmative defense fails as the Plaintiffs clearly complied with their obligations under the Policy

by providing a proof of loss and voluminous documentation. Plaintiffs further provided access to

the property for inspections and appeared for an examination under oath.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's third affirmative and demands strict proof thereof.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's fourth affirmative and demands strict proof thereof.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's fifth affirmative and demands strict proof thereof.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's sixth affirmative and demands strict proof thereof. Arch's sixth affirmative defense fails as Arch fails to plead any specific term or condition of the policy which would preclude recovery. Furthermore, this defense fails to meet the basic pleading requirements, making it impossible for Plaintiffs to adequately respond and thus should be stricken as pleaded. *Tropical Exterminators, Inc. v. Murray*, 171 So. 2d 432, 433 (Fla. 2d DCA 1965); *Zito v. Wash. Fed. Sav. & Loan Ass'n*, 318 So. 2d 175, 176-77 (Fla. 3d DCA 1975); *S. Florida Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*, 89 So. 3d 264, 267 (Fla. 3d DCA 2012).

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's seventh affirmative and demands strict proof thereof. Arch's seventh affirmative defense fails as Arch fails to plead any specific portion of Plaintiffs claim which would be excluded by its assertion.   Furthermore, this defense fails to meet the basic pleading requirements, making it impossible for Plaintiffs to adequately respond and thus should be stricken as pleaded. *Tropical Exterminators, Inc. v. Murray*, 171 So. 2d 432, 433 (Fla. 2d DCA 1965); *Zito v. Wash. Fed. Sav. & Loan Ass'n*, 318 So. 2d 175, 176-77 (Fla. 3d DCA 1975); *S. Florida Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*, 89 So. 3d 264, 267 (Fla. 3d DCA 2012).

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's ninth affirmative and demands strict proof thereof. Arch was on notice that Plaintiffs were claiming ACV and RCV amounts. Plaintiffs submitted a proof of loss

specifically outlining amounts claimed as ACV and RCV.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs deny Arch's tenth affirmative and demands strict proof thereof. Arch was on notice that Plaintiffs were claiming coverage under ordinance or law, including but not limited to correspondence dated March 29, 2022.

GOEDE, DEBOEST & CROSS, PLLC

By: /s/ *Amanda Broadwell*
Callie Frey, Esq.
Florida Bar No. 1039028
Kurtis J. Keefer, Esq.
Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
ABroadwell@gadclaw.com
CFrey@gadclaw.com
JDelgado@gadclaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on the 28th day of February, 2024, I electronically filed the foregoing with the Florida Courts E-Filing Portal and sent to:

Christopher Ramey, Esq.
Butler Wiehmuller Katz Craig LLP
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
cramey@butler.legal
mmeconnahey@butler.legal
hkerr@butler.legal
clugo@butler.legal

GOEDE, DEBOEST & CROSS, PLLC
By: /s/ *Amanda Broadwell*
Amanda Broadwell, Esq.
Florida Bar No. 111388

IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                           Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST
REQUEST FOR PRODUCTION TO PLAINTIFFS**

      Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC., ("Plaintiffs") hereby responds to

Defendant, ARCH SPECIALTY INSURANCE COMPANY'S, First Request for Production as

follows:

**I.     GENERAL OBJECTIONS**

      A.     Plaintiffs object to any request for documents and materials that constitute or

contain information concerning communications between and their counsel that are protected by

the lawyer-client privilege.

      B.     Plaintiffs object to any requests for documents and materials which constitute

materials prepared in anticipation of or as a result of litigation or which are otherwise protected by

the work-product doctrine or any other applicable privilege or protection.

      C.     Plaintiffs object to any requests for documents or materials to the extent the request

seeks to impose upon Plaintiff any obligation beyond those imposed by the Florida Rules of Civil

Procedure.

      D.     Plaintiffs object to any requests that seek information not relevant to the subject

matter of the litigation or reasonably calculated to lead to the discovery of admissible evidence.

E.    The inadvertent production by Plaintiffs of documents containing information protected from disclosure by the lawyer-client privilege, work-product doctrine or any other applicable privilege will not constitute a waiver by Plaintiffs of such protection.

F.    None of the responses constitute an admission relative to the existence of any documents, to the relevancy or the admissibility of any document, or to the truth or accuracy of any statements or characterization contained in Defendant's Request for Production.

G.    Plaintiffs do not believe that Defendant's Request for Production is intended to be interpreted so broadly as to include communications between Plaintiffs and their legal counsel. However, if the Request is intended to be interpreted that broadly, Plaintiffs object to it in that regard and moves for an extension of time to file a privilege log.

H.    Unless otherwise indicated, Plaintiffs will not produce any documents or other materials encompassed by the foregoing objections.

I.    Unless otherwise indicated, "will produce" means that the documents will be made available at 6870 North 9th Avenue, Pensacola, FL 32504 for Defendant's inspection and copying upon reasonable coordination at the offices of the undersigned counsel.

## II. SPECIFIC RESPONSES

1.  All estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or all other documents concerning the damages you are seeking in your insurance claim.
    **RESPONSE: Will be provided.**

2.  All contracts, change orders, proposals, invoices, receipts, statements, cancelled checks, investigative reports and all other records demonstrating repairs, renovations, modifications, or additions performed to the Subject Property from the date of purchase to the present date.
    **RESPONSE: Will be provided.**

3. All records of expenses you have incurred that are part of your insurance claim.
   **RESPONSE: Will be provided.**

4. All documents provided by any third party to the Plaintiffs or their agents and/or representatives regarding the claimed damage to the Subject Property.
   **RESPONSE: Will be provided.**

5. All appraisals, inspections, disclosures, or warranties obtained or provided pertaining to the Subject Property.
   **RESPONSE: Will be provided.**

6. All documents the Plaintiffs contend support its insurance claim and complaint.
   **RESPONSE: Will be provided.**

7. All documents supporting or demonstrating any awards, settlements and/or payments received from ARCH or any other source pertaining to the damages you are seeking in the insurance claim.
   **RESPONSE: None.**

8. All documents supporting or demonstrating all insurance claims made by you and/or your representatives for any type of damage associated with Subject Property.
   **RESPONSE: None.**

9. All photographs, diagram, or videos, which depict the alleged damage at the Subject Property, on or after the claimed date of loss.
   **RESPONSE: Will be provided.**

10. All photographs, diagram, or videos, which show the condition of the Subject Property, prior to the claimed date of loss.
    **RESPONSE: Will be provided.**

11. All documents identified, referenced, relied upon or indicated in Plaintiffs' Answers to Defendant's First Set of Interrogatories.
    **RESPONSE: Will be provided.**

12. All documents that evidence any ownership or other controlling or possessory interest by the members of SRTJR, LLC.
**RESPONSE: Will be provided.**

13. All documents that evidence any ownership or other controlling or possessory interest by the members OPTIMA CAPITAL, LLC.
**RESPONSE: Will be provided.**

## CERTIFICATE OF SERVICE

I certify that on the 26th day of April, 2024, I electronically filed the foregoing with the

Florida Courts E-Filing Portal and sent to:

Christopher Ramey, Esq.
**BUTLER WIEHMULLER KATZ CRAIG LLP**
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
cramey@butler.legal
mmeconnahey@butler.legal
hkerr@butler.legal
clugo@butler.legal

**GOEDE, DEBOEST & CROSS, PLLC**

By: /s/ *Amanda Broadwell*
Callie Frey, Esq.
Florida Bar No. 1039028
Kurtis J. Keefer, Esq.
Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
ABroadwell@gadclaw.com
CFrey@gadclaw.com
JDelgado@gadclaw.com
*Attorneys for Plaintiffs*

## IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
## IN AND FOR ESCAMBIA COUNTY, FLORIDA
## CIVIL ACTION

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

  Plaintiffs,

v.              Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

  Defendant.

_____/

### PLAINTIFFS' NOTICE OF SERVICE OF ANSWERS AND OBJECTIONS TO INTERROGATORIES

  Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC., in accordance with Rule 1.340 of the Florida Rules of Civil Procedure, hereby give notice of service of its Answers and Objections to Defendant's first set of Interrogatories.

### CERTIFICATE OF SERVICE

  I certify that on the 30th day of April, 2024, I electronically filed the foregoing with the Florida Courts E-Filing Portal and sent to:

Christopher M. Ramey, Esq.
Madeline S. Meconnahey, Esq.
**BUTLER WIEHMULLER KATZ CRAIG LLP**
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
mmeconnahey@butler.legal
hkerr@butler.legal
ebarker@butler.legal
cramey@butler.legal
clugo@butler.legal

          **GOEDE, DEBOEST & CROSS, PLLC**

          By: /s/ *Amanda Broadwell*
          Callie Frey, Esq.
          Florida Bar No. 1039028
          Kurtis J. Keefer, Esq.

Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
ABroadwell@gadclaw.com
CFrey@gadclaw.com
JDelgado@gadclaw.com
*Attorneys for Plaintiffs*

**IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                 Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' ANSWERS TO INTERROGATORIES

Plaintiffs, SRTJR, LLC, and OPTIMA CAPITAL, LLC, (hereinafter "Plaintiffs), pursuant to Rules 1.280 and 1.350 of the Florida Rules of Civil Procedure, responds to Defendant's Interrogatories as follows:

## I.    GENERAL OBJECTIONS

In addition to the specific objections to the Interrogatories set forth below, Plaintiffs assert the following general objections to the Interrogatories.

A.    By submitting these responses, Plaintiffs do not in any way adopt Defendant's purported definitions of words and phrases contained in the Interrogatories. Plaintiffs object to those definitions to the extent that they are inconsistent with either (i) the definitions set forth by Plaintiffs in their responses or (ii) the ordinary and customary meaning of such words and phrases. Likewise, Plaintiffs object to Defendant's purported definitions to the extent that they purport to impose upon Plaintiffs any obligations broader than, or inconsistent with, applicable discovery rules or common law.

B.    In responding to the Interrogatories, Plaintiffs do not concede the relevancy, materiality, or admissibility of the information requested, the subject matter to which the discovery

request refers, or the information given in response to the discovery request.  Plaintiffs' response to each discovery request is made subject to and without, in any way, waiving or intending to waive any objections as to the competency, relevancy, materiality, privilege or admissibility as evidence for any other purpose, of any matter thereof, in any proceeding.

C.    Plaintiffs have not completed discovery in this action and has not completed its preparation for any trial that might be held hereon.  Any response herein is based on information currently known to Plaintiffs.

D.    Plaintiffs object to any and all paragraphs of the Interrogatories to the extent they seek privileged documents, including attorney-client and attorney work-product.

## II.    SPECIFIC RESPONSES

Responding specifically to the Interrogatories by correspondingly numbered paragraphs, which incorporate the general objections listed above, Plaintiffs, states:

1. Please provide a specific dollar amount reflecting the damages you are seeking for the subject claim and identify all reports, estimates, proposals, contracts, written agreements, change orders, invoices, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.
   **ANSWER:**

   **6870 N 9th Avenue (Building 1 and 2)**
   **Pensacola, FL 32504**
   **$4,685,314.85**
   **See production for invoices, reports, estimates, proposals, and contracts.**

2. Please provide a specific dollar amount reflecting any and all repairs, renovations or modifications made to correct the damages you are seeking for the subject claim and identify all documents supporting or demonstrating your incurred expenses for these repairs.
   **ANSWER:**

   **See production of documents.**

3. Aside from those damages identified in interrogatories 1 and 2 above, please state whether you are seeking any other damages in this litigation and, if so describe in detail the nature of these damages, the basis for seeking these damages, and identify in

detail all estimates, proposals, invoices, statements, receipts, correspondence or any other documents supporting or demonstrating your claim for these damages.

**ANSWER: Plaintiffs are also seeking interest and attorneys' fees and costs. Pursuant to Sections 627.428, 626.9373, 626.911, 57.104, 57.041, Fla. Stat., Plaintiffs will be entitled to attorneys' fees and costs. Section 627.70131(5)(a), Fla. Stat., requires property insurers to pay policyholders statutory interest on payments made beyond ninety days from the date the policyholder reported the loss.**

4.  Please identify the current members of SRTJR, LLC.  Please also identify the address that is each members' domicile.  If any member of SRTJR, LLC is also a limited liability company, unincorporated entity, or trust, please identify each member, beneficiary, and trustee of that limited liability company, unincorporated entity, or trust as well as each domicile.
    **ANSWER:**

    **S. Russel Turner Jr.**
    **1165 West Jackson Street**
    **Thomasville, GA 31792**

5.  Please identify the current members of OPTIMA CAPITAL, LLC.  Please also identify the address that is each members' domicile.  If any member of OPTIMA CAPITAL, LLC is also a limited liability company, unincorporated entity, or trust, please identify each member, beneficiary, and trustee of that limited liability company, unincorporated entity, or trust as well as each domicile.
    **ANSWER:**

    **Todd M. Blair**
    **2469 Alton Road NW**
    **Atlanta, GA 30305**

    **Todd M. Blair as trustee for Thomas E. Blair Revocable Trust**
    **2469 Alton Road NW**
    **Atlanta, GA 30305**

    **Michael E. Blair as trustee for Thomas E. Blair Revocable Trust**
    **2469 Alton Road NW**
    **Atlanta, GA 30305**

*[This space is intentionally blank – notary block on following]*

STATE OF ~~FLORIDA~~ Georgia )
                      ) S.S.:
COUNTY OF Thomas )

       **BEFORE ME**, the undersigned officer, authorized by law to administer oaths and take acknowledgments, by means of [✓] physical presence or [ ] online notarization, this 29 day of April_____, 2024, by himself_____, who

       [✓] is personally known to me or

       [ ] produced _____ as identification, and after being by me duly sworn, deposes and says that the answers to the above and foregoing Defendant's First Set of Interrogatories to Plaintiffs (Numbered 1 –5) are true and correct to the best of his/her knowledge and belief.

**SRTJR, LLC**

By: _S. Russell L. J._

Print Name: _S. Russell Turner, Jr._

Title: _Manager_

(SEAL)

_Leah Blalock Odom_____
NOTARY PUBLIC, State of Florida

_Leah Blalock Odom_____
Print, Type or Stamp Commissioned

My Commission Expires: _Aug 9, 2025_

4

STATE OF ~~FLORIDA~~ *Georgia* )
                                        ) S.S.:
COUNTY OF *Cobb* )

    **BEFORE ME**, the undersigned officer, authorized by law to administer oaths and take acknowledgments, by means of [ ✓ ] physical presence or [ ] online notarization, this *29th* day of *April*, 2024, by *Todd M. Blair*, who

    [ ✓ ] is personally known to me or

    [ ] produced _____ as identification, and after being by me duly sworn, deposes and says that the answers to the above and foregoing Defendant's First Set of Interrogatories to Plaintiffs (Numbered 1 –5) are true and correct to the best of his/her knowledge and belief.

**OPTIMA CAPITAL, LLC**

By: _____

Print Name: *Todd M Blair*

Title: *Manager*

(SEAL)

NOTARY PUBLIC, State of ~~Florida~~ *Georgia*

*Shirley S. Sokolowski*

Print, Type or Stamp Commissioned

My Commission Expires: *6-27-25*

IN THE CIRCUIT COURT FOR FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION

SRTJR, LLC, and OPTIMA CAPITAL, LLC,

      Plaintiffs,

v.                                         Case No.: 2024- CA- 51

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to rule 1.350 of the Florida Rules of Civil Procedure, Plaintiff, SRTJR, LLC,

without waiving its right to submit this claim to Appraisal under Plaintiff's policy with Defendant,

files this Request for Production of Documents directed to Defendant, Arch Specialty Insurance

Company, who is required to produce the following documentation to Goede, DeBoest, & Cross,

PLLC, 6609 Willow Park Drive, Suite 201, Naples, Florida 34109, within (30) days from the date

of service of this request as provided for in the Florida Rules of Civil Procedure.

## DEFINITIONS

1.     As used herein, "Defendant," "Insurer," "you," "your," and "yours" shall refer to the Defendant, Arch Specialty Insurance Company.

2.     As used herein, "Plaintiff(s)" and "insured(s)" shall mean SRTJR, LLC and/or Optima Capital, LLC.

3.     As used herein, "the lawsuit" shall mean the above-captioned lawsuit with case number 2024-CA-51 filed in Circuit Court in Escambia County, Florida.

4.     As used herein, "the claim" and "claim for benefits" shall mean Plaintiff's insurance claim as described in the lawsuit.

5.     "Document" shall mean all written or graphic matter, however produced, or reproduced, of every kind and description in your actual or constructive possession, custody, care or control, including but not limited to, all writings, account letters, account recommendations, appointment books, books, books of accounts, calendars, CD-ROMS, charts, computer files, computer printouts, contracts, cost sheets, data compilation from which information can be obtained or can be translated through detection devices into reasonably usable form, diaries, drafts, drawings, e-mails, faxes, graphs, invoices, ledgers, magnetic disks, magnetic strips, magnetic tape,

memoranda, microfiche, microfilm, minutes, notes, optical characters, papers, photographs, punch cards, punched paper case, receipts, recognition characters, reports, sound tapes for recordings, statements, statistical records, stenographer notebooks, studies, telegrams, timesheets or logs, videotapes or recordings, vouchers, tickets, working papers, or any other tangible things.

## REQUESTS FOR PRODUCTION

Plaintiff requests that the following be produced by Defendant.

     1.     A complete certified copy of the insurance policy at issue in this case, including all attachments, riders, endorsements, declarations pages, schedules of values, and any other items or documents that were part of such policy at the time of loss.

     2.     A complete copy of the underwriting file for the policy.

     3.     All photographs, inspection reports, or other documents relating to the condition of Plaintiff's property prior to Hurricane Sally, including all inspection reports prepared by Defendant before deciding to issue the policy.

     4.     All documents relating to Defendant's contention that the claim was based upon a loss as to which the policy afforded no coverage.

     5.     All documents reflecting when Defendant was notified of the claim.

     6.     All documents supporint Defendant's contention that it was prejudiced in its investigation of the claim.

     7.     All recorded statement(s) and telephone conversations, as well as any transcripts for the same that have been reduced to writing and/or transcribed, including, but not limited to, Examination Under Oath, which were related to the claim.

     8.     Any and all statements that can be attributed to Plaintiffs, including, but not limited to, any claim log notes or entries memorializing, summarizing, transcribing, and/or documenting any statements made by Plaintiffs during pre-suit in accordance with Florida Rule of Civil Procedure 1.280. Defendant may produce claim log notes redacted to exclude all other privileged information.

     9.     All reports by engineers, general contractors and all other professional persons and entities retained by Defendant which support Defendant's contention that there is no coverage for the claim.

     10.     As to Defendant's affirmative defenses, all documents and materials referenced by, relating to, supporting, or which you may use to attempt to prove, such defense, including but not limited to those that may be in the underwriting or claims files, books, bulletins, manuals, guides, statements of policies and procedures, or other similar claims-related publications, notes, emails, letters, correspondence, electronic messages, documents, guidelines, manuals, contracts, bulletins, affidavits, reports, treatises, and memoranda.

11. Any and all documentation relied upon by the Defendant, relative to each and every affirmative defense raised by the Defendant.

12. Any and all electronically stored information/content/data responsive to any of the foregoing requests.

## CERTIFICATE OF SERVICE

I certify that on the 9th day of May, 2024, I electronically filed the foregoing with the

Florida Courts E-Filing Portal and sent to:

Christopher M. Ramey, Esq.
Madeline S. Meconnahey, Esq.
**BUTLER WIEHMULLER KATZ CRAIG LLP**
400 N. Ashley Dr., Ste. 2300
Tampa, FL 33602
mmeconnahey@butler.legal
hkerr@butler.legal
ebarker@butler.legal
cramey@butler.legal
clugo@butler.legal

**GOEDE, DEBOEST & CROSS, PLLC**

By: /s/ *Amanda Broadwell*
Callie Frey, Esq.
Florida Bar No. 1039028
Kurtis J. Keefer, Esq.
Florida Bar No. 668011
Amanda Broadwell, Esq.
Florida Bar No. 111388
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
ABroadwell@gadclaw.com
CFrey@gadclaw.com
JDelgado@gadclaw.com
*Attorneys for Plaintiffs*

**IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA
CIVIL ACTION**

SRTJR, LLC and OPTIMA CAPITAL, LLC,

        Plaintiffs,                        Case No.: 2024-CA-000051

vs.

ARCH SPECIALTY INSURANCE COMPANY,

        Defendant.

_____/

### DEFENDANT'S NOTICE OF REMOVAL TO OPPOSING COUNSEL

      YOU ARE HEREBY NOTIFIED that Defendant, ARCH SPECIALTY INSURANCE COMPANY, in the above styled action has, on this day, filed a Notice of Removal to the United State District Court for the Northern District of Florida, Pensacola Division. A copy of the Notice of Removal is attached hereto as **Exhibit 1**. The removal of the above-styled action to the United State District Court for the Northern District of Florida has been effectuated hereby.

      Please serve the undersigned with copies of all pleadings that may be filed by you in the United State District Court for the Northern District of Florida pursuant to the removal of this cause an in accordance with the Federal Rules of Civil Procedure.

BUTLER WEIHMULLER KATZ CRAIG LLP

_____
CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.: 0044808
cramey@butler.legal
MADELINE S. MECONNAHEY, ESQ.
Florida Bar No.: 1033019
mmeconnahey@butler.legal
Secondary: ldickens@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602

Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Counsel for Defendant.*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Callie Frey, Esq.
Kurtis J. Keefer, Esq.
Amanda Broadwell, Esq.
Goede, DeBoest & Cross, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
*Attorney's for Plaintiff*

by e-Portal on May 29, 2024.

_____
MADELINE S. MECONNAHEY, ESQ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SRTJR, LLC and OPTIMA CAPITAL, LLC,

      Plaintiffs,                      CASE NO.:
                                        State Court Case No:  2024-CA-000051
vs.

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## NOTICE OF REMOVAL

Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH"), by and through its undersigned counsel, pursuant to 28 U.S.C. § 1332(a)(1), § 1441(a), and § 1446(b), removes an action pending in the Circuit Court of the First Judicial Circuit of Florida in and for Escambia County, styled SRTJR, LLC and OPTIMA CAPITAL, LLC v. ARCH SPECIALTY INSURANCE COMPANY, Case No. 2024-CA-000051, where Plaintiffs filed suit against ARCH, and further states:

## TIMELY NOTICE OF REMOVAL

1.      On January 16, 2024, Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC, filed a Complaint against ARCH in the Circuit Court of the First Judicial Circuit of Florida in and for Escambia County, Florida.  ARCH was served with Summons and Complaint on January 22, 2024. The Complaint alleged that ARCH breached a policy of insurance issued to Plaintiffs.[1]

2.      At the time the Complaint was served, the action was not removable as ARCH was not aware whether complete diversity existed.  Plaintiffs' Complaint was silent as to the identities and citizenships of the members of Plaintiffs' limited liability companies.[2]

3.      On February 22, 2024, ARCH served limited discovery requests on Plaintiffs in

---

[1] See Plaintiffs' Complaint and Plaintiff's Notice of Final Service (attached a **Composite Exhibit 1)**, and the subject insurance policy attached at Ex. A to Plaintiff's Complaint (attached as **Composite Exhibit 1)**.
[2] See Plaintiffs' Complaint (attached as **Composite Exhibit 1).**

1

order to determine the identities and domiciles of the members of Plaintiffs' limited liability companies.

4.    On April 30, 2024, ARCH discovered that the case was removable based upon the diversity of the parties per the requirement of 28 U.S.C. § 1332(a), when Plaintiffs responded to ARCH's discovery requests in state court.  Plaintiffs each identified their members and their domiciles, who, as further set forth below, are all citizens of Georgia.[3]  As Plaintiffs' members all have Georgia citizenship, both Plaintiffs are Georgia citizens.

5.    ARCH is permitted 30 days to remove from the receipt of the first post-suit paper that provides the basis for removal.  *See* 28 U.S.C. § 1446(b)(3); *see also*, *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1214 (11th Cir. 2007) (discussing that a party must remove within 30 days of receiving the document that provides the basis for removal).  The definition of an 'other paper' is broad and may include any formal or informal communication received by a defendant. *Westland Com. Park v. Arch Specialty Ins. Co.*, 587 F.Supp.3d 1153, 1156 (S.D. Fla. Feb. 23, 2022).

6.    A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless there is a finding that a plaintiff acted in bad faith in order to prevent a defendant from removing the action. *See* 28 U.S.C. § 1446(c)(1).

7.    This Notice of Removal is filed timely as it is filed within 30 days of ARCH's receipt of Plaintiffs' responses to ARCH's First Set of Discovery Requests (April 30, 2024), and within 1 year after commencement of the action (January 16, 2024).  *Westland Com. Park*, 587 F.Supp.3d at 1156.

8.    Pursuant to 28 U.S.C. § 1446(a), true and legible copies of all process, pleadings, orders, and other papers or exhibits of every kind filed with the state court are being filed with this Notice of Removal.

---

[3]  *See* Plaintiff's Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).

9.     Additionally, pursuant to 28 U.S.C. § 1332, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VENUE

10.    This Notice of Removal is filed in the United States District Court for the Northern District of Florida, Pensacola Division, the court for the district and division that embraces the state court where the removed state action was pending, and is filed within the time provided for the removal of actions to the United States District Court. *See* 28 U.S.C § 1446(b).

## JURISDICTION

11.    This Court has jurisdiction.  The state court action is a civil action which falls under this Court's original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  ARCH is entitled to remove this action pursuant to 28 U.S.C. § 1441.

## COMPLETE DIVERSITY EXISTS

12.    There is complete diversity between Plaintiffs and ARCH.

13.    ARCH is, and was at the time the Complaint was filed in state court, incorporated in the State of Missouri, with its principal place of business in the State of New Jersey.[4]  Therefore, for the purposes of determining diversity under 28 U.S.C. § 1332(c)(1), ARCH is both a citizen of the State of Missouri and the State of New Jersey.

14.    Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC are, and were at the time the Complaint was filed in Florida's State Court, limited liability companies.  For the purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1), a limited liability company has its citizenship where its members have their citizenship.  *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.

---

[4] *See* Florida Office of Insurance Regulation Summary (attached as **Exhibit 3**).

3

1998); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Westland Com. Park*, at *3.

15.    To remove, ARCH must plead the identities of each member of Plaintiffs' limited liability companies, something it could not do when it was served with the Complaint.  However, on April 30, 2024, Plaintiffs served their verified answers to ARCH's First Set of Interrogatories. This was the first time ARCH was provided with the identities of the members of Plaintiffs, SRTJR, LLC and OPTIMA CAPITAL, LLC.

16.    Plaintiffs' verified answers to ARCH's First Set of Interrogatories provided that Plaintiff, SRTJR, LLC's sole member is a citizen of the State of Georgia.  Thus, Plaintiff, SRTJR, LLC is a citizen of the State of Georgia.

A.    The following are facts establishing the Georgia citizenship of Plaintiff, SRTJR, LLC, regarding its only member: S. Russel Turner, Jr. (with a date of birth of May 9, 19XX), an individual whose domicile is located in Thomasville, Georgia:

i.    Plaintiffs' Verified Answer #4 to ARCH's First Set of Interrogatories, dated April 30, 2024, provides that the only member Plaintiff, SRTJR, LLC, is S. Russel Turner, Jr., with an address of 1165 West Jackson Street, Thomasville, Georgia 31792.[5]

ii.    S. Russel Turner, Jr. is listed in the records maintained by the State of Georgia as an Authorizer for SRTJR, LLC, which lists its principal office address of 1165 West Jackson Street, Thomasville, Georgia 31792.[6]

---

[5] *See* Plaintiff's Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).

[6] *See* Business Information from State of Georgia Corporations Division for Plaintiff, SRTJR, LLC (attached as **Exhibit 4**).

iii.   The Thomas County, Georgia property appraiser website reflects that S. Russell Turner, Jr. is the co-owner of the residential property located at 819 Blackheart St., Thomasville, Georgia 31792.[7]

iv.   S. Russel Turner, Jr. has at least one registered motor vehicle in the State of Georgia.

17.   Plaintiffs' verified answers to ARCH's First Set of Interrogatories to Plaintiffs additionally provided the citizenship of the members of Plaintiff, OPTIMA CAPITAL, LLC.. OPTIMA CAPITAL, LLC's  members are all citizens of the State of Georgia.  Thus, Plaintiff, OPTIMA CAPITAL, LLC is a citizen of the State of Georgia.

A.   The following are facts establishing the Georgia citizenship of Plaintiff, OPTIMA CAPITAL, LLC, regarding its first member: Todd M. Blair (with a date of birth of November 4, 19XX), an individual whose domicile is located in Atlanta, Georgia.

i.   Plaintiffs' Verified Answer #5 to ARCH's First Set of Interrogatories, dated April 30, 2024, provides that one of the two members of Plaintiff, OPTIMA CAPITAL, LLC, is Todd M. Blair. with an address of 2469 Alton Road NW, Atlanta, Georgia 30305.[8]

ii.   Todd M. Blair has a driver's license issued by the State of Georgia with an address listed as 2469 Alton Road NW, Atlanta, Georgia 30305.

iii.   The Fulton County, Georgia property appraiser website reflects that Todd M. Blair is the owner of the residential property located at 2469 Alton Road NW, Atlanta, Georgia 30305.[9]

---

[7] *See* Thomas County Property Appraiser report (attached as **Exhibit 5).**
[8] *See* Plaintiff's Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2).**
[9] *See* Fulton County Property Appraiser report (attached as **Exhibit 6).**

iv.     Todd M. Blair is listed in the records maintained by the State of Georgia as a Registered Agent for OPTIMA CAPITAL, LLC, which lists its principal office address of 3350 Riverwood Parkway, Suite 450, Atlanta, Georgia, 30339.[10]

v.      Todd M. Blair. has at least one registered motor vehicle in the State of Georgia

B.      The following are facts establishing the Georgia citizenship of Plaintiff, OPTIMA CAPITAL, LLC, regarding its second member: the Thomas E. Blair Revocable Trust, located in Atlanta, Georgia.   The citizenship of a traditional trust is determined by the citizenship of its trustees.   *See Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019).

i.      Plaintiffs' Verified Answer #5 to ARCH's First Set of Interrogatories, dated April 30, 2024, provides that one of the two members of Plaintiff: OPTIMA CAPITAL, LLC, is the Thomas E. Blair Revocable Trust.[11]

ii.     Plaintiffs' Verified Answer #5 to ARCH's First Set of Interrogatories additionally identifies the two trustees of the Thomas E. Blair Revocable Trust as Todd M. Blair and Micheal E. Blair.[12]

iii.    As established above, Todd M. Blair, trustee the Thomas M. Blair Revocable Trust, is a citizen of the State of Georgia.

---

[10] *See* Business Information from State of Georgia Corporations Division for Plaintiff, Optima Capital, LLC (attached as **Exhibit 7**).

[11] *See* Plaintiff's Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).

[12] *See* Plaintiff's Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).

iv.    Plaintiffs' Verified Answer #5 to ARCH's First Set of Interrogatories, dated April 30, 2024, provides that Michael E. Blair, trustee the Thomas M. Blair Revocable Trust, has an address of 2469 Alton Road NW, Atlanta, Georgia 30305.[13]

v.    The Cherokee County, Georgia property appraiser website reflects that Michael E. Blair is the co-owner of the residential property located at 2506 Garden Plum Way, Woodstock, Georgia 30189.[14]

vi.    Michael E. Blair has at least one registered motor vehicle in the State of Georgia.

## AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

18.    ARCH issued a commercial property policy to Plaintiffs under ESP1000007-01 (the "subject policy"). The subject policy period is December 18, 2019 to December 18, 2020.[15]

19.    Plaintiffs' Complaint asserts a cause of action for breach of contract, alleging that ARCH failed to "acknowledge coverage for all or a portion" of Plaintiffs' alleged Hurricane Sally loss.[16]

20.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiffs claim their damages total $4,685,314.85.[17]

## COMPLIANCE WITH 28 U.S.C. § 1446

21.    Pursuant to the provisions of 28 U.S.C. § 1446, ARCH files copies of all process, pleadings, orders, and other papers or exhibits of every kind, including depositions, on file in the

---

[13] *See* Plaintiffs' Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).
[14] *See* Cherokee County Property Appraiser report (attached as **Exhibit 8).**
[15] *See* the subject insurance policy attached as Ex. A to Plaintiff's Complaint (attached as **Composite Exhibit 1**).
[16] *See* Plaintiffs' Complaint (attached as **Composite Exhibit 1).**
[17] *See* Plaintiffs' Verified Answers To Defendant's First Set of Interrogatories dated April 30, 2024 (attached as **Exhibit 2**).

state court as of the date of this filing.

22.     Pursuant to 28 U.S.C. § 1446(d), ARCH filed this Notice of Removal with this Court and is serving a copy of this Notice of Removal upon counsel for all parties.  A true copy of this Notice of Removal is also being filed by ARCH with the state court where this action was pending and written notice will be given to all adverse parties "promptly after" the filing in this Court of this Notice of Removal, in full compliance with 28 U.S.C. § 1446(d).

23.     Pursuant to 28 U.S.C. § 1446(d), ARCH provided written notice of the filing of the Notice of Removal, along with copies of this Notice of Removal and all attachments, to all adverse parties and with the Clerk of the Circuit Court of the First Judicial Circuit of Florida in and for Escambia County.

WHEREFORE, ARCH respectfully request that this Court (1) remove this action from the Circuit Court; (2) exercise jurisdiction over this matter as provided by law; and (3) place the action on the docket of this Court for further proceedings, the same as if this action had originally been executed in this Court.

Respectfully submitted this 29th day of May, 2024.


BUTLER WEIHMULLER KATZ CRAIG LLP


CHRISTOPHER M. RAMEY, ESQ.
Florida Bar No.:  0044808
cramey@butler.legal
MADELINE S. MECONNAHEY, ESQ.
Florida Bar No.:  1033019
mmeconnahey@butler.legal
Secondary          ldickens@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602

8

Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

I certify that on May 29, 2024, I presented the foregoing to the Clerk of Court for filing

and uploading to the CM/ECF system.  A copy of the foregoing was forwarded to the following

this same date:

Callie Frey, Esq.
Kurtis J. Keefer, Esq.
Amanda Broadwell, Esq.
Goede, DeBoest & Cross, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
*Attorney's for Plaintiff*

CHRISTOPHER M. RAMEY, ESQ.